# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02450-MJW

BEVERLY CRIBARI,

Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

Defendant.

_____

# FINAL PRETRIAL ORDER
_____

## 1.  DATE AND APPEARANCES

A Final Pretrial Conference is scheduled for November 16, 2017 at 10:30 a.m. at the Alfred A. Arraj United States Courthouse, Courtroom A502, 901 19th Street, Denver, CO 80294.

It is anticipated that the following attorneys will appear to represent the parties:

| **Appearing for the Plaintiff:** | **Appearing for the Defendant:** |
|---|---|
| Marc R. Levy, Esq. | Kurt H. Henkel, Esq. |
| Matthew W. Hall, Esq. | Nicole L. King, Esq. |
| LEVY LAW, P.C. | Winslow R. Taylor, III, Esq. |
| 6465 Greenwood Plaza Blvd., Suite 650 | Tucker Holmes, P.C. |
| Englewood, CO  80111 | Quebec Centre II, Suite 300 |
| (303) 796-2900 | 7400 E. Caley Avenue |
| mlevy@lwwlaw.com | Centennial, CO  80111 |
| mhall@lwwlaw.com | (303) 694-9300 |
| | khh@tucker-holmes.com |
| DezaRae D. LaCrue, Esq. | nlk@tucker-holmes.com |
| Franklin D. Azar & Associates, P.C. | wrt@tucker-holmes.com |
| 14426 East Evans Avenue | |
| Aurora, CO 80014 | |
| (303) 757-3300 | |
| lacrued@fdazar.com | |

## 2. JURISDICTION

This Court has diversity jurisdiction over this civil action pursuant to 28 U.S.C. §1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000 excluding costs and interest.

## 3. CLAIMS AND DEFENSES

**a.     Plaintiff:**     Ms. Cribari was involved in a motor vehicle collision on February 13, 2015. Ms. Cribari suffered serious injuries including the crushing of her radius in her right wrist. Ms. Cribari underwent several surgeries on her right wrist, but continues to suffer from ongoing pain and limited use. Ms. Cribari's medical bills exceed $80,000. Furthermore, Ms. Cribari's surgeon has provided an impairment rating and provided opinions regarding her future care.

The tortfeasor responsible for causing the collision paid policy limits of $100,000 to Ms. Cribari. Ms. Cribari submitted her claim to Allstate pursuant to her underinsured motorist coverage. Ms. Cribari fully cooperated with Allstate in its investigation of her injuries and complied with all provisions of the insurance contract. Allstate, however, failed to properly and timely evaluate her claim, and used numerous and various pretexts to continue to delay having to make a payment, still to this day. Allstate misused several pieces of information, ignored or refused to get other information, invented information, and manipulated its computer program (Colossus) to reach a pre-determined result to minimize its corporate liability to favor its shareholders with regard to refusing and continuing to refuse to pay benefits it has determined it owes. Allstate also used tools to reduce its evaluation of plaintiff's claim outside of its contractually obligated duty to evaluate what plaintiff is "legally entitled to recover" under

Colorado tort law. Allstate concealed from its insured that its experienced and trained claim representative evaluated this claim, even after reduction for the payment by the underlying tortfeasor, to be worth "policy limits", only to be overridden by a supervisor with much less knowledge of the claim.  Throughout the claims process, Allstate representatives requested irrelevant and "make work" information and forms, which were used solely to create "unnecessary procedural hurdles" to plaintiff receiving any benefits, which was successful even to this day.  the experienced Allstate representative attempted to lessen her job duties by demanding plaintiff or her counsel do her work for her, including, for example, failing to reasonably investigate (or even try to investigate) the cost of Ms. Cribari's future medical care in order to continue to delay any obligation for payment, Despite having the tools to do so at her fingertips through her computer. As further examples, Allstate failed to investigate the impact of Ms. Cribari's injuries on her future earnings. This conduct by Allstate resulted in delay of benefits to Ms. Cribari and was a complete abdication of its "non-delegable duty" to refuse to pay a claim "without conducting a reasonable investigation based upon all available information." This case is not an isolated example, but is consistent with Allstate's, and this particular adjuster's, habit and practice.

    Ms. Cribari's claims against Allstate include breach of insurance contract or claim for UIM benefits, unreasonable delay, and bad faith insurance conduct.

        **b.**     **Defendant:** Defendant denies that it breached the terms of the policy; denies that it delayed or denied insurance benefits owed to Plaintiffs; denies the nature and extent of Plaintiff's claimed injuries, damages, and losses; and denies its conduct was unreasonable pursuant to C.R.S. §§ 10-3-1115 and 10-3-1116. Allstate maintains the following defenses:

1. Plaintiff may have failed to take such reasonable steps as would have mitigated or minimized the alleged injuries and damages, precluding recovery on these injuries and damages.

2. The alleged injuries and damages, if any, may have existed before the occurrence complained of, and recovery therefore shall be precluded or diminished as required by law.

3. The claims presented are governed by and may be barred, reduced, limited, restricted, and excluded by Plaintiff's and failure to comply with the provisions of the Allstate policies.

4. Plaintiff has failed to satisfy conditions precedent, including the failure to cooperate and comply with all terms and conditions of the Policy.

5. Plaintiff's damages, if any, may be barred or limited by the provisions of C.R.S. § 13-21-102.5.

6. Plaintiff's claims and damages are limited by setoffs which Defendant is entitled to effect.

7. Allstate conducted a reasonable and timely investigation of Plaintiff's UIM claim but was hindered and obstructed by Plaintiff through her concealment of information relating to her claimed injuries, damages, and losses. This included, without limitation, representing to Defendant that she would provide certain material information relating to her future wage loss and future medical expenses. Unbeknownst to Defendant, Plaintiff retained a forensic vocational rehabilitation expert and a forensic economist approximately five months before filing suit to evaluate Plaintiff's future wage loss, cost of future medical expenses and non-economic damages related to her alleged injury and loss of use. Soon after their retention, these forensic experts interviewed one or more of Plaintiff's treating providers to determine future medical expenses.

These experts also interviewed the Plaintiff and her husband. The results of these interviews ultimately resulted in opinions about the value of these alleged injuries and damages for hundreds of thousands of dollars. Despite complaining that Defendant undervalued her claim, these facts which purported to establish hundreds of thousands of dollars in damages were never disclosed to Defendant until almost one year later when Plaintiff disclosed her Rule 26(a)(2) experts in the present case.

8. Despite having the raw data forming the basis for these opinions approximately five months before suit was filed and almost a year before their opinions were finally disclosed, Plaintiff concealed this information from the Defendant in an effort to set up this Defendant for bad faith and unreasonable delay claims so as to recover the automatic statutory penalties of treble damages and attorneys' fees. The central premise of this lawsuit is a contrivance and a sham.

9. This tactic of setting up the Defendant continued well into the litigation of this matter and was most recently displayed with respect to Defendant's effort to conduct a vocational rehabilitation IME. A supplemental report from Defendant's vocational rehabilitation expert was finally received on November 7, 2017, after the close of business. Plaintiff informed the IME examiner that she no longer intended to pursue a claim for loss of future income (a central component of Plaintiff's bad faith and delay allegations) because she is being "groomed" by her supervisor to take over his job. This critical and material fact, a fact upon which Plaintiff premised a claim she could lose $65,000 per year for the rest of her working life, was never disclosed by Plaintiff or her attorneys until this IME on October 26, 2017. Her failure to disclose this material fact to Defendant is itself a breach of the contract and a violation of the Federal

Rules of Civil Procedure. Defendant had to learn that Plaintiff's future wage loss claim was meritless and should be abandoned through an IME that Plaintiff baselessly objected to and fought against for months, all the while maintaining the preposterous position that Defendant's failure to adequately consider her lost future income was evidence of bad faith. Plaintiff's baseless litigation opposition to the IME itself caused delay in the evaluation of her claim and has been part of a larger pattern to intentionally prolong the investigation of this claim and manufacture delay which Plaintiff will disingenuously attribute to Defendant.

10.     Defendant contends that Plaintiff has acted in bad faith and has violated the implied covenant of good faith and fair dealing. Defendant contends that Plaintiff failed to cooperate with Defendant's investigation beginning before litigation and continuing through present by concealing facts which would lessen the value of her UIM claim. Plaintiff's conduct, both prior to this lawsuit as well as during this lawsuit, conclusively demonstrates Plaintiff's bad faith as she has taken active steps to impede Defendant's ability to fully investigate the claims presented, all in conscious furtherance of a manifestly improper objective; Plaintiff has attempted to set up Defendant for bad faith. Due to Plaintiff's conduct in knowingly and intentionally breaching the contract and then frivolously bringing the present action, Defendant has been substantially prejudiced by being forced to pay the limits of the UIM policy or be subjected to bad faith litigation, including by incurring substantial legal fees and costs. Defendant further contends that portions of Plaintiff's statement of the case contain information that has never been disclosed or is false.

## 4. STIPULATIONS

1.     On February 13, 2015, Beverly Cribari was involved in a motor vehicle accident

when Steven Perko ran a red light at the intersection of South Cherry Street and Leetsdale Drive.

2.     Ms. Cribari did not cause or contribute to causing the collision on February 13, 2015.

3.     Ms. Cribari was injured in the subject collision and received medical treatment following the subject collision.

4.     Mr. Perko's automobile insurance carrier, GEICO, offered and paid its policy limits of $100,000 to Ms. Cribari.

5.     At the time of the February 13, 2015 collision, Ms. Cribari was covered under Allstate Fire and Casualty Insurance Company Policy Number 976 316 105, which had UM/UIM limits of $250,000 per person/$500,000 per accident.

6.     In connection with the February 13, 2015 accident, Ms. Cribari made a claim for UIM coverage benefits.

## 5. PENDING MOTIONS

1.     Defendant's Motion for Summary Judgment filed 8/14/17; Response filed 9/12/17; and Reply filed 9/26/17.

2.     Plaintiff's Motion to Strike Portions of Defendant's Reply Brief in Support of Motion for Summary Judgment or, In the Alternative, For Leave to File Sur-Reply to Defendant's Reply in Support of Motion for Summary Judgment filed 10/11/17; Response filed 11/1/17.

## 6. WITNESSES

a.     Non-expert witnesses to be called by each party:

1.     Plaintiff's witnesses: *See* **Exhibit A** (listed separately by will call, may call and

through deposition testimony) attached hereto.

    2.    Defendant's witnesses: *See* **Exhibit B** (listed separately by will call, may call and through deposition testimony) attached hereto.

b.    Expert witnesses to be called by each party:

    1.    Plaintiff's witnesses: *See* **Exhibit A** (listed separately by will call, may call and through deposition testimony) attached hereto.

    2.    Defendant's witnesses: *See* **Exhibit B** (listed separately by will call, may call and through deposition testimony) attached hereto.

## 7. EXHIBITS

1.    Plaintiff's Exhibits: *See* **Exhibit C** attached hereto.

2.    Defendant's Exhibits: *See* **Exhibit D** attached hereto.

3.    Copies of listed exhibits must be provided to opposing counsel no later than 30 days before trial. The objections contemplated by Fed.R.Civ.P. 26(a)(3) shall be filed with the clerk and served by hand delivery or facsimile no later than 14 days after the exhibits are provided.

## 8. DISCOVERY

Discovery has been completed other than that the parties have agreed to allow the deposition of Tom Linton, subject to discussion of the special issues below. The parties are currently looking for a mutually agreeable date to perform the deposition of Mr. Linton.

## 9. SPECIAL ISSUES

**Plaintiff:** On September 19, 2017, Defendant submitted "supplemental" disclosures with claim notes dating from September 24, 2016 to August 21, 2017 (with some notes from subsequent dates redacted in full), claiming now it intends to rely on same to support its defense

that it has continued to handle the claim after the lawsuit was filed in good faith.  Upon conferral, defendant's counsel indicated he intends to ask his (already deposed) standard of care expert to review these "new" disclosures, and issue a new opinion.  This expert was deposed, at some great expense, on June 23, 2017, and the disclosure deadline was May 12, 2017.  The supplemental disclosure itself was grossly untimely, and defendant should not be allowed to use any of that documentation for any purpose. *See,* Fed.R.Civ.P. 26(a), 37(c). Nor should any expert opinion be allowed to be supplemented at this late date.

In that regard, no witness or exhibit that was not timely disclosed should be allowed.

**Defendant:** Given the substantial volume of information that was not revealed to Defendant until after the discovery cutoff, caused in no small part by Plaintiff's refusal to cooperate with a request for Rule 35 examination, Plaintiff has no basis upon which to object to a supplemental report from Defendant's experts.  Defendant submitted supplemental disclosures discussed above in a timely fashion because the subject of said disclosure (an updated claim evaluation) occurred near the time it was created. Defendant intends, and has always intended, to update its claim evaluation upon receipt of the IME that Plaintiff long fought against. The timing issue set forth above is a further manifestation of Plaintiff's bad faith set up. Defendant wishes to have its claim handling expert supplement his report to address Defendant's post-litigation claim handling because Plaintiff intends to argue that Defendant's post-litigation claim handling was delayed and unreasonable. Defendant cannot disclose that which does not exist and at the time it made a supplemental disclosure the claim investigation was still ongoing. Plaintiff's position with respect to Mr. Linton is nonsensical, but consistent with the pattern of obstruction and non-cooperation.

Defendant requests the right to re-depose Plaintiff with respect to information she recently relayed regarding her apparent abandonment of her loss of future earnings claim to ascertain when and why she has taken this position. This is relevant to Defendant's defenses that it was set up for bad faith and Plaintiff breached the insurance contract. Plaintiff should also confirm that no medical provider has, to this day, diagnosed her with a torn left shoulder labrum which requires surgical intervention as she occasionally claims, and that Dr. Choudhry has never informed Plaintiff that she will lose the ability to use her hand.  If any provider has diagnosed Plaintiff with a torn left shoulder labrum and contended it was caused by the accident, or informed Plaintiff she requires surgery for an alleged torn left shoulder labrum, Plaintiff must immediately produce the contemporaneous medical records documenting the diagnosis and recommendation.

Plaintiff has also disclosed her current counsel, Ms. LaCrue, as a witness. This disclosure is to address what Plaintiff contends is a "surprise" assertion of the defense of failure to cooperate, despite its express inclusion in Defendant's original Answer. This is also despite the fact that Ms. LaCrue presented and handled the pre-litigation presentation of Plaintiff's claim, communicated with Defendant on Plaintiff's behalf throughout claim handling, then deposed the original claim handler with whom she dealt before filing the present case, and who then decided well after the discovery cutoff to endorse herself as a witness via a surprise affidavit contained within Plaintiff's Response to Defendants Motion for Summary Judgment.  Should the Court allow the late disclosure, Defendant requests the right to depose Ms. LaCrue. Defendant expects this to create numerous evidentiary issues, and additional litigation with respect to the waiver or preservation of the attorney/client privilege. Ms. LaCrue should produce all her notes and

communications with respect to any witnesses or experts, as well as any calendar entries related to this case. Any of the relevant experts should similarly be compelled to produce any notes, communications or other records that were previously withheld in reliance on privilege or work product. Defendant should be allowed to re-depose these witnesses on these subjects.

Plaintiff has also disclosed her treating physician, Dr. Choudhry, as a specially retained expert. This disclosure, occurring on July 31, 2017, was untimely. It was also insufficient as it fails to contain a written report setting forth complete statement of all opinions of Dr. Choudhry, along with the reasons and basis of the opinions. The untimely disclosure of Dr. Choudhry occurred after his deposition, during which Dr. Choudhry was presented as a treating provider and non-retained expert witness, and is further evidence of Plaintiff's bad faith intentions and willful obstruction of Defendant's investigation of her claim. Defendant will move to strike this late and insufficient disclosure but wishes to re-open the deposition of this witness if the disclosure is allowed.

Defendant anticipates filing a motion in limine precluding any discovery or the admission into evidence of the amount of money Defendant was considering offering Plaintiff in order to fully and finally resolve and all claims (including bad faith and unreasonable delay) at mediation, as well as any offers made at mediation pursuant to F.R.E. 408 and C.R.S. § 13-22-307.

## 10. SETTLEMENT

The parties, through their counsel, certify that:

a. Counsel for the parties met in person on August 14, 2017, to discuss in good faith the settlement of the case.

b. The participants in the settlement conference included counsel and party

representatives.

      c.      The parties were promptly informed of all offers of settlement.

      d.      Counsel for the parties do not intend to hold future settlement conferences.

      e.      It appears from the discussion by all counsel that there is little possibility of settlement.

      f.      Counsel for the parties considered ADR in accordance with D.C.COLO.LCivR. 16.6.

## 11. OFFER OF JUDGMENT

Counsel acknowledge familiarity with the provision of Rule 68 (Offer of Judgment) of the Federal Rules of Civil Procedure. Counsel have discussed it with the clients against whom claims are made in this case.

## 12. EFFECT OF FINAL PRETRIAL ORDER

Hereafter, this Final Pretrial Order will control the subsequent course of this action and the trial, and may not be amended except by consent of the parties and approval by the court or by order of the court to prevent manifest injustice. The pleadings will be deemed merged herein. This Final Pretrial Order supersedes the Scheduling Order. In the event of ambiguity in any provision of this Final Pretrial Order, reference may be made to the record of the pretrial conference to the extent reported by stenographic notes and to the pleadings.

## 13. TRIAL AND ESTIMATED TRIAL TIME; FURTHER TRIAL PREPARATION PROCEEDINGS

1. This matter is a trial to a jury.

2. The estimated trial time is five (5) days.

3.      The trial is to occur at the United States District Court for the District of Colorado in Denver, Colorado.

DATED this ____ day of _____, 2017.

                                                    BY THE COURT

                                                    _____
                                                    United States Magistrate Judge

APPROVED:

_____          _____

| Marc R. Levy, Esq. | Kurt H. Henkel, Esq. |
|---|---|
| LEVY LAW, P.C. | Tucker Holmes, P.C. |
| 6465 Greenwood Plaza Blvd., Suite 650 | Quebec Centre II, Suite 300 |
| Englewood, CO  80111 | 7400 E. Caley Avenue |
| (303) 796-2900 | Centennial, CO  80111 |
|  | (303) 694-9300 |

_____

DezaRae D. LaCrue, Esq.
Franklin D. Azar & Associates, P.C.
14426 East Evans Avenue
Aurora, CO 80014
(303) 757-3300

Attorneys for Plaintiff                                        Attorneys for Defendant