IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02450-NRN

BEVERLY CRIBARI,

Plaintiff,

v.

ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,

Defendant.

**ORDER ON PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT (DKT. #114), AND
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT (DKT. #115).**

**N. REID NEUREITER**
**United States Magistrate Judge**

This case is before the Court for all purposes pursuant to 28 U.S.C. § 636(c),
upon the consent of the parties (Dkt. #18) and the Order Referring Case to Magistrate
Judge entered by Judge William J. Martinez on December 6, 2016 (Dkt. #19). The
Parties have filed cross-motions for summary judgment. They will be **DENIED**. The
case will proceed to trial.

**1. Background**

This is an insurance coverage dispute. Plaintiff Beverly Cribari was in an
automobile accident in February 2015. She was injured and has had to undergo more
than one surgery to her wrist as a result. Ms. Cribari was not at fault in the accident,
and the negligent driver's insurer settled for his policy limits of $100,000. Based on the
severity of her injuries, future physical impairment, and economic damages, Ms. Cribari
asserts that the negligent driver was underinsured. She therefore submitted an

underinsured motorist claim to her own insurer, Allstate Fire & Casualty Ins. Company ("Allstate").

On August 29, 2016, Ms. Cribari filed claims in Colorado state court against Allstate for breach of contract, common law bad faith, and unreasonable delay/denial. Allstate removed the case to this federal court on September 9, 2016. (Dkt. #1.)

Currently before the Court are Plaintiff's Motion for Summary Judgment (Dkt. #114) and Defendant's Motion for Summary Judgment. (Dkt. #115.)

Just prior to the hearing on these competing motions, held on February 25, 2019, Defendant Allstate sent a check for full policy limits ($250,000) to Ms. Cribari and her counsel, while simultaneously purporting to reserve its right to recoup the amount if it is determined that Ms. Cribari failed to cooperate with Allstate in the investigation of the claim, thereby forfeiting her benefits under the policy.

In light of the payment and Allstate's reservation of rights, Ms. Caribari asked for the right to file an additional brief addressing the legal implications of this payment, suggesting that such a payment may waive and render moot Allstate's failure to cooperate defense. The Court granted Ms. Cribari leave to file a sur-reply, which was filed on March 4, 2019. (Dkt. #134.) Allstate was given leave to file their own sur-reply addressing the same issue. Allstate's response was filed March 8, 2019. (Dkt. #136.)

Before addressing the cross-motions for summary judgment, the Court must first consider the impact on this case, if any, of Allstate's payment of full policy limits subject to a purported reservation of rights.

## 2. Allstate's payment of full policy limits does not render moot Allstate's failure to cooperate defense.

Allstate asserts that Ms. Cribari breached the contractual duty to cooperate. Ms. Cribari argues that by paying full policy limits (even subject to a reservation of rights), Allstate has waived any failure to cooperate defense to Ms. Cribari's breach of contract claim. By Ms. Cribari's reasoning, the purported failure to cooperate defense has been rendered moot by Allstate's policy limits payment. (*See* Dkt. #132 at 2.)

On February 13, 2019, Allstate issued a check for $250,000 made payable jointly to Ms. Cribari and her counsel's law office. (*See* Dkt. #134-1.) Accompanying this check was a "reservation of rights" letter dated February 12, 2019 from Allstate's outside counsel to Ms. Cribari's attorney stating, in material parts, the following:

> This letter is to advise that Allstate is hereby submitting payment of $250,000.00 in UIM benefits (check included), subject to a reservation of rights. Such payment shall not operate in any way as a waiver of any rights or obligations that either Mrs. Cribari or Allstate may have pursuant to the subject policy or the law, nor shall it operate to invalidate any terms or conditions of the subject policy, or any rights that Allstate has under the subject policy or otherwise, to assert a position that Ms. Cribari failed to cooperate during the pendency of her claim and comply with all terms and conditions of the policy, preventing Allstate from obtaining material documents and information necessary for it to fully investigate and evaluate the totality of her UIM claim.
>
> *          *          *
>
> Allstate will exercise its right to have a judge and jury resolve any questions regarding whether Mrs. Cribari breached her duties and failed to perform such duties pursuant to the terms and conditions of the subject policy. Allstate is not waiting its right to rely on any provision of the policy, or of the law, or in equity which may now or at a later time appear to have application to the claims made and the rights and obligations of the parties to the subject policy. Allstate reserves its right to conduct further investigation to the extent additional information is disclosed or discovered, and deny or decline coverage should a judge or jury conclude that Mrs. Cribari failed to

3

cooperate in the investigation of her claim and/or failed to comply
with the terms and conditions of the subject policy.

(Dkt. #134-2 at 1-3.)

On receipt of the check and the letter, Ms. Cribari's counsel sent an e-mail to
Allstate's outside counsel seeking clarification "regarding the recent payment of
$250,000 to Ms. Cribari." (Dkt. #134-3 at 1.) Noting that the reservation of rights letter
made no mention of "whether Allstate agrees this [check] may be cashed," Ms. Cribari
asked for confirmation that "regardless of what may otherwise happen in this litigation,
Allstate will not request return of any funds later." (*Id.*) Allstate refused to give any
assurance that it would not seek to recoup the funds. Its counsel wrote back: "[M]y
client has paid these benefits subject to a reservation of its rights. Should a judge or a
jury determine that [Ms. Cribari] failed to cooperate with the investigation of her UIM
claim, we will pursue recovery of these monies." (*Id.*)

At oral argument, Ms. Cribari's counsel expressed frustration with this payment
and the accompanying reservation of rights, explaining in words or substance that it was
not a payment at all because Ms. Cribari could not spend the money for fear that
Allstate would seek to recoup it in the future. Allstate's counsel effectively conceded
that making the payment while simultaneously reserving rights put Ms. Cribari in a
difficult position, and he would not be able to recommend that she spend the money
given the uncertainty about whether Allstate would seek to recover those funds.

Ms. Cribari argues that, absent limited exceptional circumstances, Colorado law
makes no provision for an insurer to make a payment while reserving the right to recoup
that payment later after a trial. In Ms. Cribari's view, "a true, operable payment by an
insurance carrier of the full amount of available UIM benefits would serve to moot the

insured plaintiff's claim for breach of contract, and since the purported policy violation of breach of the *contractual* duty to cooperate is a 'contract' defense, that purported defense is now also moot and no longer applicable to any remaining claims." (Dkt. #134 at 2) (emphasis in original.) Ms. Cribari also argues that because there is no right to recoup the payment in the insurance policy itself, Allstate cannot create such a right by merely sending a reservation of rights letter. Says Ms. Cribari, "Allstate has made a final payment of the full amount of benefits, has no right to recoup that payment, and both the breach of contract claim and failure to cooperate defense are moot." (*Id.* at 4.)

Ms. Cribari also argues that even if Colorado does allow payment subject to a reservation of rights and later recoupment, summary judgment should be granted on the failure to cooperate defense anyway. Argues Ms. Cribari, "Allstate's payment of the $250,000 policy limit confirms that any purported prejudice suffered by Allstate precluding it from fully adjusting the insurance claim either never really existed, or has been resolved, allowing it to in fact evaluate the claim." (*Id.*)

Allstate, for its part, argues that it has acted appropriately and there is nothing wrong with tendering payment of the full amount of the policy while reserving the right of recoupment if a jury ultimately finds Ms. Cribari breached the policy by failing to cooperate. Allstate cites *Auto-Owners Ins. Co. v. Summit Park Townhome Assn.*, No. 14-cv-03417, 2016 WL 1321507 (D. Colo. April 5, 2016) as recognizing that it is appropriate in Colorado for an insurer to make a payment while simultaneously reserving the right to recoup the funds after litigation.

Having reviewed the cases cited by the Parties, I agree with Judge Babcock's decision in *Auto-Owners* that an insurer in Colorado is entitled to make a payment,

subject to a reservation of rights, without waiving its right to get a final determination from a court of the insured's entitlement to payment.

*Auto-Owners* was a hail damage case involving the Summit Park Townhome Association. The insurer, Auto-Owners, disputed the extent of the damage claimed and the insured association invoked an appraisal provision whereby two supposedly impartial and competent appraisers and a neutral umpire were to decide "the value of the property and the amount of the loss." *Id.* at *1. The appraisal award that resulted was suspiciously large in Auto-Owners' view, and although the insurer promptly paid the amount of the appraisal award, it did so "under a full and complete reservation of all of its rights under the policy and applicable law." *Id.* at *2. Auto-Owners then filed an objection to the appraisal award in federal court, arguing that one of the appraisers was not impartial as required under the policy's appraisal provision. Summit Park responded that, by paying the award, Auto-Owners had waived any objections regarding the appraisal process. Judge Babcock held that because the payment was made with a reservation of rights, there was no waiver of Auto-Owners' ability to challenge the appraisal award and recoup the amount paid:

> Summit Park argues that Auto-Owners waived any objections regarding the appraisal award by paying the award. Under Colorado law, which the parties agree applies here, an insurer may pay an insured under a reservation of rights and then seek to recoup its payment. *See Valley Forge Ins. Co. v. Health Care Mgmt. Partners, Ltd.*, 616 F.3d 1086, 1091-92 (10th Cir. 2010). An insurer might lose the right to contest coverage where it fails to make a reservation of rights. *See Management Specialists v. Northfield Ins. Co.*, 117 P.3d 32, 37 (Colo. App. 2004); *See also Nikolai v. Farmers Alliance Mut. Ins. Co.*, 830 P.2d 1070, 1073 (Colo. App. 1991). As set forth above, Auto-Owners explicitly made a full reservation of rights when it paid the appraisal award and, accordingly, has not waived the right to seek recoupment of that payment.

*Id.* at *4.

It is true that the case cited in *Auto-Owners* for the proposition that an insurer may make a payment subject to a reservation of rights without causing a waiver, *Valley Forge Ins. Co.*, involved somewhat different facts than both the instant case and *Auto-Owners*. *Valley Forge* involved the tendering of a legal defense subject to a reservation of rights, with the corresponding ability to recoup the payment later if the court were to ultimately find that the insured was not entitled to a defense in the first place.

There are sound public policy justifications for encouraging an insurer to tender a defense subject to a reservation of rights. *See Valley Forge Ins. Co.* 616 F.3d at 1092. *Valley Forge Ins. Co.* itself was based on *Hecla Mining Co. v. New Hampishire Ins. Co.*, 811 P.2d 1083 (Colo. 1991), in which the Colorado Supreme Court laid out the "appropriate course of action" for an insurer who believes it is under no obligation to defend. *Id.* at 1089. In Colorado, the proper course is to provide a defense under a reservation of rights to seek reimbursement. *Id.* (cited in *Valley Forge Ins. Co.*, 616 F.3d at 1091). Neither *Valley Forge* nor *Hecla Mining* required that the insurance contract itself contain language permitting a reservation of rights in order to recoup monies erroneously paid in providing a defense. *Valley Forge Ins. Co.* at 1092.

Here, like in *Hecla* and *Valley Forge*, there is no contractual language referencing a right to recoupment. At the same time, the policy does provide that "[t]he right to benefits and the amount payable will be decided by agreement between the insured person and us. If the insured person and we do not agree, then the disagreement will be resolved in a court of competent jurisdiction." (Dkt. #136-1 at 4.) By reserving the right to recoupment, Allstate is preserving its right to have the dispute regarding the alleged failure to cooperate resolved by the court.

I recognize that policy justifications for tendering a defense subject to a reservation of the right to recoup are not present here. Indeed, one might argue that in contrast to the tendering of a defense, by paying the full amount of the policy limits in connection with a personal injury matter while simultaneously threatening to recoup those same funds, the insurer provides no benefit at all to the insured (because the money cannot or should not be spent), and merely exacerbates the uncertainty and distress associated with not getting paid in a timely way on the claim. This maneuver may provide additional ammunition for Ms. Cribari's argument that Allstate has acted in bad faith. Just because an insurance company *can* reserve rights while tendering a payment does not mean that it *should*. On the other hand, the insured can take some solace from the fact that Allstate has effectively conceded the <u>amount</u> of the claim, and also from the fact that if Ms. Cribari wins at trial, the money will be readily available.[1]

This said, I agree that a reservation of rights "is not a destruction of the insured's rights nor a creation of new rights for the [insurance c]ompany. It preserves that to which the parties had originally agreed." *Mut. Of Enumclaw v. Harvey*, 772 P.2d 216, 220 (Idaho 1989). Here, Allstate was clear that it was reserving its rights at the time it tendered policy limits on the claim. The contractual right being preserved is Allstate's right not to have to pay a claim when the insured allegedly failed to cooperate resulting in material prejudice, along with the right to have the dispute decided by a court. I do not find a basis to conclude that Allstate's failure to cooperate defense is now moot. Neither do I find that Allstate has waived the failure to cooperate defense.

---

[1] Ms. Cribari seems to agree in part when she states in her sur-reply, "And most importantly, this is a binding admission that Ms. Cribari's claim is evaluated (and worth) the full amount of her first-party benefits purchased, $250,000." (Dkt. #134 at 10.)

Ms. Cribari also argues that, even if I accept Judge Babcock's view of Colorado law on reservation of rights letters as recited in *Auto-Owners*, the tendered payment should result in summary judgment against Allstate because it shows that there could not have been any prejudice from her alleged failure to cooperate. Because Allstate now concedes that the amount of Ms. Cribari's claim exceeds $250,000, her purported failure to provide certain information regarding her claims for lost wages and future medicals cannot have been material, because it is "apparent that Allstate has been able to complete its evaluation of Plaintiff's claim and has concluded that her claim is worth in excess of the $250,000 policy limit." (Dkt. #134 at 10.) In other words, the "alleged prejudice precluding Allstate from doing its legally-required claim investigation has been cured" and "Allstate's failure to cooperate defense has been extinguished." (*Id.*)

I reject this proposition. Allstate's claimed prejudice here is not the present inability to accurately assess the extent of Ms. Cribari's damages. It was the inability to investigate and assess the extent of her damages in a timely way prior to Ms. Cribari filing suit. Allstate's theory is that Ms. Cribari's withholding of important material information was essentially a set-up, intended to delay Allstate's investigation and adjustment of the claim, so that Ms. Cribari's counsel could bring a bad faith lawsuit, which brings with it the attendant statutory penalties and potential award of attorney's fees. According to Allstate, it never would have had to defend this case, and would not be subject to potential bad faith claims and associated penalties, had Ms. Cribari and her counsel timely provided the information Allstate was seeking. So, the argument goes, Allstate's prejudice arises from having to defend this lawsuit, caused by Ms. Cribari's withholding of important information that would have allowed Allstate to conclude earlier in the process that Ms. Cribari was entitled to full policy limits.

Failure to cooperate constitutes a breach only where the insurer suffers "material and substantial disadvantage."  *State Farm Mut. Auto. Ins. Co. v. Secrist*, 33 P.3d 1272, 1275 (Colo. App. 2001). A jury could reasonably conclude that Allstate suffered a material and substantial disadvantage by having its investigation delayed and being sued for bad faith as a result.  *Windhorst v. State Farm Mut. Auto. Co.*, No. 11CA1045, 2012 WL 1884652 (Colo. App. April 24, 2012) (unpublished) (Dkt. #136-3) involved a claim against an insurer for alleged failure to timely process and pay uninsured/underinsured motorists benefits.  The trial court had granted summary judgment to the insurer because the insured had failed to cooperate by refusing to provide numerous requested medical records.  In affirming the grant of summary judgment, the court of appeals explained in part the prejudice to the insurer: "[I]f Windhorst had provided all relevant records or identified allegedly irrelevant records in a privilege log, State Farm could have made an informed offer on the claim and possibly avoided this lawsuit."  (Dkt. #136-3 at 18.)

This is the same theory of prejudice being put forward by Allstate in this case. The prejudice has not been extinguished just because Allstate (belatedly) was able to adjust the claim after the lawsuit was filed.  *See also Pilgrim v. State Farm Fire & Cas. Ins. Co.*, 950 P.2d 479, 486 (Wash. Ct. App. 1997) (insurer prejudiced by insured's failure to provide financial information in connection with his first party claim because "[w]ithout access to financial documents, State Farm could not evaluate the validity of the [insurance] claim.  It could not decide whether the claim was covered, much less prepare a defense to the inevitable suit by [the insured] if it denied coverage.").  Therefore, Allstate's ability to adjust the claim today followed by its tendered payment

do not preclude Allstate from arguing prejudice due to Ms. Cribari's alleged failure to cooperate.

### 3. Summary Judgment Standards

Having addressed the issues of waiver of the failure to cooperate defense and alleged lack of prejudice, I now turn to the Parties' cross motions for summary judgment on the issue of Allstate's defense of failure to cooperate.

A motion for summary judgment serves the purpose of testing whether a trial is required. *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003). A court shall grant summary judgment if the pleadings, depositions, answers to interrogatories, admissions, or affidavits show there is no genuine issue of material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it might affect the outcome of the suit under the governing substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

The moving party bears the initial responsibility of providing to the court the factual basis for its motion. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). "The moving party may carry its initial burden either by producing affirmative evidence negating an essential element of the nonmoving party's claim, or by showing that the nonmoving party does not have enough evidence to carry its burden of persuasion at trial." *Trainor v. Apollo Metal Specialties, Inc.*, 318 F.3d 976, 979 (10th Cir. 2002). Only admissible evidence may be considered when ruling on a motion for summary judgment. *World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985).

If the movant properly supports a motion for summary judgment, the non-moving party has the burden of showing there are issues of material fact to be determined.

11

*Celotex*, 477 U.S. at 322. That is, the opposing party may not rest on the allegations contained in his complaint, but must respond with specific facts showing a genuine factual issue for trial. Fed. R. Civ. P. 56(e); *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("The mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact."). *See also Hysten v. Burlington N. & Santa Fe Ry.*, 296 F.3d 1177, 1180 (10th Cir. 2002). "[T]he content of summary judgment evidence must be generally admissible and . . . if that evidence is presented in the form of an affidavit, the Rules of Civil Procedure specifically require a certain type of admissibility, i.e., the evidence must be based on personal knowledge." *Bryant v. Farmers Ins. Exch.*, 432 F.3d 1114, 1122 (10th Cir. 2005). "The court views the record and draws all inferences in the light most favorable to the non-moving party." *Pepsi-Cola Bottling Co. of Pittsburg, Inc. v. Pepsico, Inc.*, 431 F.3d 1241, 1255 (10th Cir. 2005).

A judge's function at summary judgment is not to weigh the evidence and determine the truth of the matter, but to determine if there is a genuine issue for trial. *Tolan v. Cotton*, 572 U.S. 650, 656 (2014).

**4. Genuine issues of material fact preclude the grant of summary judgment in favor of either side on Ms. Cribari's claims.**

In reviewing the parties' respective motions, my initial impression had been that there were likely to be fact questions that would preclude the grant of summary judgment in favor of either party. Having heard argument, and having reviewed (again) in detail all the pleadings, the various attachments, and relevant caselaw, I conclude that my initial impression was correct: there are fact issues that prevent me from

granting judgment in favor of Allstate because of Ms. Cribari's alleged failure to cooperate. Similarly, there are fact issues that prevent me from deciding, as a matter of law and undisputed fact, that Allstate's "failure to cooperate" defense lacks merit.

In Colorado, a cooperation requirement in an insurance policy is "valid and enforceable." *Farmers Auto. Inter-Insurance Exchange v. Konugres*, 202 P.2d 959, 962 (Colo. 1949). Where such a requirement exists, an insured who "fails to cooperate with the insurer in some material and substantial respect" may forfeit the right to recover. *Secrist*, 33 P.3d at 1275.

Importantly, "[w]hether there has been 'cooperation' on the part of an assured with the company . . . is usually a question of fact." *Konugres*, 202 P.2d at 963. *See also Hansen v. Barmore*, 779 P.2d 1360, 1364 (Colo. App. 1989) ("Generally, the question of whether the insured has violated his insurance policy by failing to cooperate with the insurer is a question of fact for the trial court."). Non-cooperation constitutes breach only if "material and substantial disadvantage" to the insurer is proved. *Id.* "[A]ny formal, inconsequential or collusive lack of cooperation will be immaterial." *Konugres*, 202 P.2d at 962. In addition, what might appear initially to be a breach of the cooperation clause "may be excused, if it develops that the failure of the assured was due to mistake, and that there was no exercise of bad faith on his part." *Id.*

### a. Issues of fact concerning Ms. Cribari's alleged failure to cooperate preclude a grant of summary judgment in favor of either Allstate or Ms. Cribari on Ms. Cribari's breach of contract claim.

Allstate argues that Ms. Cribari's breach of contract claim fails because she cannot show that she complied with the terms of the contract. Allstate relies on policy terms that require the insured to, among other things, authorize the insurer "to obtain medical reports and other records pertinent to the claim," and "cooperate with [Allstate]

13

in the investigation . . . of any claim." (Dkt. #115, quoting Exhibit Q.) The insurance policy also contains a warning that it is "unlawful to knowingly provide false, incomplete, or misleading facts or information to an insurance company for the purpose of defrauding or attempting to defraud the company." (*Id.*)

Allstate points to evidence that Ms. Cribari (or her lawyers) had retained a forensic expert in March of 2016 to obtain information regarding Ms. Cribari's future medical costs and to prepare a "life care plan." Meanwhile, Allstate's adjuster, Ms. Humphrey, had repeatedly advised Plaintiff's counsel (in February 2016 and again in April 2016) that Defendant needed all estimated future surgical costs, wage loss time and amounts, an impairment rating, and to know whether the disability rating would be different after surgery. In the face of these requests, although Ms. Cribari's forensic expert was speaking with her surgeon and performing research into costs for future medical services, the identity of the forensic expert and her findings were not disclosed to Allstate until well after the lawsuit was filed in September 2016. In addition, an economic expert, who has opined on the total net present value of Ms. Cribari's future medical/life care expense, started doing work on the case in June 2016. The economic expert's report was not disclosed until May of 2017. It appears that Allstate's most significant complaint is that, despite numerous requests, Ms. Cribari (or her lawyer) never provided information regarding the costs of expected future surgeries, future medical care, and future wage loss, until after suit was filed. (Dkt. #122-6 (Expert report of Jon Sands) ("[Plaintiff's counsel] had the authority and multiple opportunities to cooperate with Allstate and provide the requested information. She inexplicably excluded information regarding the cost of future medical care.").)

Ms. Cribari, for her part, points out that the Allstate never once informed Ms. Cribari that she was not cooperating in the investigation, and never gave notice that her insurance benefits would be forfeited for failure to provide specific requested information. Ms. Cribari says she substantially complied with all relevant requests, including by inviting the adjuster to meet with Ms. Cribari's surgeon (an invitation that was not accepted—allegedly for scheduling reasons), by providing a written summary of the surgeon's opinions, by providing an impairment rating, and by providing requested medical authorizations which would have allowed Allstate to obtain documents and information directly from Ms. Cribari's medical providers. Ms. Cribari also provided information about how much money she was making at the time of the accident, and a letter from her employer about the commissions she was earning. Ms. Cribari and her lawyer also met personally with the adjuster. In addition, Ms. Cribari says that based on the description of her expected future surgeries, Allstate could and should have been able to estimate the cost of future medical care on its own.

Ms. Cribari's counsel, Ms. LaCrue, has submitted her own affidavit describing the information that *was* provided to Allstate, including the opinion of Ms. Cribari's surgeon.[2]

---

[2] I decline Allstate's invitation to disregard attorney LaCrue's affidavit. (Dkt. #129 at 13-14.) It is obvious that whatever information was provided to Allstate, it would have been provided by Ms. Cribari's counsel, not Ms. Cribari herself. Ms. LaCrue was the person with knowledge of the interactions with Allstate and therefore is an important witness to Ms. Cribari's cooperation (or lack thereof) in Allstate's investigation. (*See* Dkt. #83, Defendant's Motion to Disqualify Dezarae D. LaCrue, Esq. ("Ms. LaCrue's status as a necessary witness should be uncontested.").) Because the issue of Ms. Cribari's alleged failure to cooperate remains in the case, and because Ms. LaCrue's testimony may be critical on that subject, Defendant's Motion to Disqualify is no longer premature. I leave it to counsel for the respective parties to confer between themselves on this subject and promptly submit a joint statement on the issue of Ms. LaCrue's continued participation in this case as trial counsel, in light of my ruling today. (*See* Dkt. #86, Plaintiff's Response to Defendant's Motion to Disqualify Dezarae D. LaCrue, Esq., at 4-5 ("Plaintiff agrees that if Allstate is permitted to pursue its failure to cooperate defense

Ms. LaCrue explains that while the surgeon was able to identify the name of procedures that Ms. Cribari would have to undergo, the doctor was unable to identify the cost of those procedures. Ms. LaCrue says she never promised to provide information on future medical costs. She only agreed to see if it was available.

Ms. Cribari also notes that Allstate never initiated any coverage investigation into whether Ms. Cribari violated a provision of the insurance policy. Allstate never told Ms. Cribari that she was risking a forfeiture of benefits for failing to cooperate until after the lawsuit was filed. Allstate also never gave Ms. Cribari an opportunity to cure the alleged contractual violation, which is not consistent with Allstate's general policies. And Allstate's own Rule 30(b)(6) witness could not say what the basis was, at the time the lawsuit was filed, for claiming that Allstate had been prejudiced by the alleged failure to cooperate.

Finally, Ms. Cribari argues that Allstate's adjusters had many available resources to be able to determine what Ms. Cribari's future medical expenses were likely to be— including, among others, computer databases, a Mitchell Decision Point Program, and a Health Care Blue Book.

Having read both motions for summary judgment, the respective replies, and reviewed the attached affidavits and other exhibits, I conclude that this case is fraught with factual disputes. Did Ms. Cribari or her attorney actually fail to provide material information that had been requested and promised? Could Allstate have estimated the future medical costs of these procedures on its own? Was Allstate materially prejudiced by the alleged failure to provide information? If Ms. Cribari's policy benefits are to be

at trial, Ms. LaCrue will not be able to continue in her role as counsel for Plaintiff because she will be required to rebut Allstate's failure to cooperate and breach of contract defenses through her testimony.").)

forfeited for failure to cooperate, why did Allstate not give her notice of that failure, and give her an opportunity to cure?

In contrast with some of the other cases cited where the failure to cooperate on the part of the insured is patent and egregious, the alleged failure in this case is not as clear.  For example, in *Walker v. State Farm Fire & Casualty Co.*, No. 16-CV-00118-PAB-STV, 2017 WL 1386341(D. Colo. Feb. 2, 2017), Magistrate Judge Varholak recommended summary judgment be granted in favor of an insurer on a breach of insurance contract claim based on failure to cooperate where the plaintiff/insured was extraordinarily uncooperative in the insurer's investigation of an alleged theft of $60,000 in luxury goods.  The *Walker* plaintiff had refused to answer questions during two examinations under oath.  His answers to simple and direct questions were unhelpful and evasive.  He refused to verify bank records received from his bank; he refused to verify photographs that he had submitted of the allegedly stolen items; he refused to verify or substantiate proof of his income or even his ownership of the alleged stolen goods.  He refused to provide a tax release that would have allowed the insurer to verify income.  And despite making a claim for $60,000 in lost luxury goods, he could not produce a receipt for a majority of the items, and provided no documentary proof to establish his ability to purchase $60,000 worth of luxury goods.

Another example is *Harris v. Allstate Insurance Company*, No. 09-cv-01953-LTB-MJW, 2010 WL 2543560 (D. Colo. June 22, 2010), where Judge Babcock granted summary judgment in favor of an insurer because of the plaintiff's failure to cooperate. The *Harris* insurance policy had specific policy language specifying that the "injured person may be required to take medical examinations by physicians we choose, as often as we reasonably require.  We must be given authorization to obtain medical

reports and other medical records pertinent to the claim." *Id.* at *3. Yet, in the face of this unequivocal policy language, the *Harris* plaintiff refused to submit to an IME by a doctor chosen by Allstate, and failed to execute the requested medical release authorizations. Judge Babcock found these failures to abide by the specific contractual obligations to constitute a refusal to cooperate and failure to satisfy the conditions precedent to coverage. "No reasonable trier of fact could conclude otherwise." *Id.* at *4.

Then there is the *Windhorst* case, where the insurance policy required the insured to "cooperate" and "assist" the insurer in "securing and giving evidence" and also required the insured to provide written authorizations to allow the insurer to obtain "medical bills," "medical records," "wage, salary, and employment information; and any other information [the insurer] deem[s] necessary to substantiate the claim." (Dkt. #136-3 at 2-3.) Although the insured refused to sign blanket medical releases, the insurer was willing to accept relevant medical documents along with a privilege log of withheld documents. But no log of privileged medical records was ever provided prior to suit being filed. And when the insured appeared for an examination under oath, it was terminated after twenty minutes because of interference by the insured's counsel. The insurer gave a "final" warning, via a letter, giving the insured another opportunity to cooperate by providing relevant medical records or a privilege log. The insurer noted that the insured had failed to provide relevant medical records from at least ten different health care providers. But no further medical records or any privilege log were provided until after suit was filed. There was an unrebutted affidavit from the insurer explaining that the claim could not be adjusted without the requested records.

*Doerr v. Allstate Ins. Co.*, 121 F. App'x. 638 (6th Cir. 2005), was a case involving fire loss after suspected arson, where the insured refused to supply information of his exact whereabouts on the date of the fire, did not provide any of the requested financial records or documents, refused to provide evidence of his financial condition, assets and expenses, utility records for the insured property, or the extent of phone calls between himself and the current tenant. The insurer specifically warned the insured that his non-compliance with the insurance policy conditions could result in a forfeiture of his rights under the policy. In light of all those facts, the court held that the insured's failure to provide the requested records breached his duty to cooperate.

In contrast to these cases, there is evidence that Ms. Cribari did provide a significant amount of information that had been requested by Allstate. A reasonable juror could conclude that Ms. Cribari *did* cooperate in the investigation of the claim, substantially complying with the terms of the insurance policy. In addition, there is evidence from which a reasonable juror could conclude that, to whatever extent additional information was not provided, the failure did not prevent (or should not have prevented) Allstate from making a reasonable estimate of Ms. Cribari's future medical costs. I further note that, in a number of the cases cited above, the failure to cooperate supported a conclusion by the insurer that the claim was fraudulent, and the failure to cooperate was an effort by the insured to prevent the insurer from discovering the fraud. Here, Ms. Cribari was indisputably injured, and there is no suggestion that the failure to provide additional information was part of a plot to conceal a fraudulent claim.

For all these reasons, Allstate's motion for summary judgment on Ms. Cribari's breach of contract claim must be denied. There are fact issues here for the jury to decide.

For similar reasons, Ms. Cribari's Motion for Summary Judgment on the failure to cooperate defense (Dkt. #114) must be denied as well. In light of the evidence presented by Allstate, including the report of its insurance expert, Mr. Sands, a reasonable jury could conclude that Ms. Cribari or her agents intentionally withheld material information that would have allowed Allstate to more easily adjust the claim, and thereby avoid the bad faith lawsuit. "Generally, the question of whether the insured has violated his insurance policy by failing to cooperate with the insurer is a question of fact for the trial court." *Hansen*, 779 P.2d at 1364. So it is in this case.

Ms. Cribari relies on *Ahmadi v. Allstate Insurance Co.*, 22 P.3d 576 (Colo. App. 2001), arguing that without specific policy language requiring Ms. Cribari to provide the estimated cost of future medical treatment and lost wages, Ms. Cribari cannot be deemed to be in violation of the policy. (Dkt. #114 at 15-16.) In *Ahmadi,* the defendant insurer requested examinations under oath of three insureds. The insureds were not all English speakers and appeared together for the examinations. The insurer insisted that the insureds be sequestered and not be present during the other insured's respective examinations. The insureds refused to be examined separately because of the language difficulties. The examinations were not conducted and the insurer then denied benefits under the policy, asserting that the refusal to be examined separately constituted a failure to cooperate in the investigation, resulting in a forfeiture of policy benefits. The Court of Appeals disagreed.

Because there was no specific language in the policy that required the examinations under oath to be conducted separately, failure to submit to separate examinations was not deemed a failure to cooperate nor a contract breach warranting denial of benefits. "Had Allstate desired to impose such a condition, it could have done

so by an express term of the policy." *Ahmadi*, 22 P.3d at 578.  The *Ahmadi* court further

ruled that the right to recovery under the policy "may be forfeited only when, in violation

of a policy provision, the insured fails to cooperate with the insurer in some material and

substantial respect." *Id.* at 579.

It is true, as Ms. Cribari argues, that there is no specific policy provision requiring

Ms. Cribari to conduct her own claim investigation and create and provide information to

Allstate.  But there is a contractual obligation to cooperate in Allstate's investigation.

*See State Farm Mut. Auto. Ins. Co v. Brekke*, 105 P.3d 177, 189 (Colo. 2004) ("In

addition to the duty to investigate owed by the insurance company to the insured, the

insured owes contractual duties of cooperation and reporting to the insurance

provider."); *Fischer v. State Farm Mut. Auto. Ins. Co.*, 419 P.3d 985, 993 (Colo. App.

2015) (approving jury instruction to the effect that "an insured has a duty to cooperate

with an insurer and assist with his claim").  Viewing the evidence in the light most

favorable to Allstate, there is sufficient evidence in this case from which a jury could

reasonably conclude that Ms. Cribari did not cooperate in the investigation of the case.

Ultimately, whether she complied with the terms of the policy will be for the jury to

decide.

> **b. Issues of fact preclude a grant of summary judgment to either Ms. Cribari or Allstate on Ms. Cribari's claims for statutory unreasonable delay and denial and common law bad faith.**

In what appears to be almost a throwaway argument at the conclusion of her

Motion for Summary Judgment, Ms. Cribari asserts she is entitled to summary judgment

on her statutory unreasonable delay claim (under C.R.S. §10-3-1115) and her common

law bad faith claim.  (Dkt. #114 at pp. 24-25.)

Allstate also moves for summary judgment on these claims because, Allstate argues, its conduct in investigating and handling Ms. Cribari's claims were reasonable as a matter of law. (Dkt. #115 at 22-27.)

The determination of whether an insurer has breached its duties to its insured "is one of reasonableness under the circumstances." *Pham v. State Farm Mut. Auto. Ins. Co.*, 70 P.3d 567, 572 (Colo. App. 2003). "Ordinarily, what constitutes reasonableness under the circumstances is a question of fact for the jury." *Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008).

Without engaging in a lengthy recitation of Allstate's claims handling and investigation, I have reviewed all the evidence and considered all the arguments submitted by the Parties. I conclude there are genuine issues of material fact that preclude the grant of summary judgment in favor of either side on these claims. I come to this conclusion having viewed the extensive evidence submitted by each side in the light most favorable to the non-moving party. As the United States Supreme Court has instructed, it is not my role at the summary judgment stage "to weigh the evidence and determine the truth of the matter." *Tolan*, 572 U.S. at 656. That is for the jury.

## 5. Conclusion

For the reasons stated above, it is hereby ORDERED that Plaintiff's Motion for Summary Judgment (Dkt. #114) is DENIED, and it is FURTHER ORDERED that Defendant's Motion for Summary Judgment (Dkt. #115) also is DENIED. This case will go to trial.

Dated this 21st day of March, 2019.

BY THE COURT:

N. REID NEUREITER
United States Magistrate Judge