IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:16-cv-02450-NRN

BEVERLY CRIBARI,

Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

Defendant.

_____

**MOTION TO STRIKE DEFENDANT ALLSTATE'S EXPERT JON SANDS PURSUANT TO F.R.E. 702**
_____

Plaintiff, Beverly Cribari, by and through her attorneys, Marc R. Levy, Matthew W. Hall and Ryan E. Nichols of Levy Law, P.C., hereby submits her Motion to Strike Defendant Allstate's Expert Jon Sands Pursuant to F.R.E. 702 as follows:

**Certificate of Conferral**

Through conferral over the past several weeks, Plaintiff understand Defendant objects to the relief sought herein.

**INTRODUCTION**

Plaintiff seeks to strike the opinions of Jon Sands, an attorney hired by Allstate to offer opinions regarding the claim handling that is the subject of this litigation.

First, Mr. Sands offers several opinions for which he fails to identify necessary foundational information (*ipse dixit*). Namely, he offers a number of opinions that Allstate's

investigation, evaluation and negotiations complied with insurance industry standards. Not only does he fail to explain *how* Allstate's conduct complied with such standards, but he fails to identify *any* applicable standards upon which such opinions are based. Instead, most of Mr. Sands' opinions are substantiated by nothing more than his own *ipse dixit* about what he thinks the law and industry standards are, thereby leaving Plaintiff without the tools necessary to respond to (and if necessary, impeach) such opinions, leaving the Court without the necessary information to evaluate the soundness of such opinion in accordance with the Court's gatekeeping responsibilities, and posing a substantial risk of unfairly prejudicing Plaintiff. Further, Mr. Sands offers a number of opinions that usurp the function of the Court in instructing the jury on the law, and usurp the function of the jury in offering his lay opinions about how they should interpret disputed facts simply because Mr. Sands says so.

Mr. Sands also offers a number of improper opinions that attempt to justify Allstate's substandard claim handling by referencing an insurance regulation that the Colorado appellate courts have ruled is simply not applicable in insurance bad faith litigation, and the evidence here is undisputed Allstate never used, relied on, or trained its personnel about this regulation.

Finally, Mr. Sands was disclosed by Allstate (and is self-described in his reports) as an expert in insurance and bad faith law, but exceeds the bounds of this disclosure and his qualifications by offering opinions as to the standard of care for personal injury attorneys, as well as opinions regarding the standard practices of personal injury attorneys. Further, Mr. Sands wholly fails to substantiate such opinions with any applicable law or industry standards.

## LEGAL STANDARD

A witness who is qualified as an expert by knowledge, skill, experience, training or

education may testify in the form of an opinion or otherwise if (a) the expert's scientific, technical or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.  F.R.E. 702.

The proponent of expert testimony bears the burden of proving the foundational requirements of Rule 702 by a preponderance of the evidence.  *United States v. Nacchio*, 555 F.3d 1234, 1241 (10th Cir. 2009).  Determinations regarding admissibility of expert opinion testimony require a two-step analysis: the court must (1) determine whether the expert is qualified to give the opinion, and (2) examine whether the opinion is reliable. *103 Investors I, L.P. v. Square D Co.*, 470 F.3d 985, 990 (10th Cir. 2006).  There are three specific requirements that must be shown to establish reliability: (1) that the "testimony is based upon sufficient facts or data," (2) that "the testimony is the product of reliable principles and methods," and (3) that "the expert has reliably applied the principles and methods to the facts of the case." Fed. R. Evid. 702(b)-(d).  *United States v. Yeley-Davis*, 632 F.3d 673, 684 (10th Cir. 2011).

## ARUGUMENT AND AUTHORITY

**I.    Mr. Sands Must Be Precluded from Testifying at Trial as he Fails to Provide Necessary Foundation for his Opinions and Instead Bases his Opinions on his Own *Ipse Dixit*, and his Opinions Usurp the Function of the Court and the Jury**

"When the purpose of testimony is to direct the jury's understanding of the legal standards upon which their verdict must be based, the testimony cannot be allowed.  In no instance can a witness be permitted to define the law of the case." *Specht v. Jensen*, 853 F.2d 805, 810 (10th Cir. 1988).    This is particularly true for attorney-witnesses, such as Mr. Sands.

3

"There is a significant difference between an attorney who states his belief of what law should govern the case and any other expert witness. While other experts may aid a jury by rendering opinions on ultimate issues, our system reserves to the trial judge the role of adjudicating the law for the benefit of the jury." *Id*. at 808-09. When an attorney is allowed to usurp that function, harm is manifest in at least two ways: 1) the jury may believe the attorney-witness, who is presented to them as an "expert," is more knowledgeable than the judge in a given area of the law; and 2) it is detrimental to the trial process in that if one side is allowed the right to call an attorney to define and apply the law, one can reasonably expect the other side to do the same. It can be expected that both legal experts will differ over the principles applicable to the case, thus creating a great potential that the jurors will be confused by these differing opinions, and thus such confusion may be compounded by different instructions given by the court. *Id*. at 809.

A witness may refer to the law in expressing an opinion without that reference rendering the testimony inadmissible. *Zuchel v. City & Cty. of Denver, Colo.*, 997 P.2d 730, 742 (10th Cir. 1993) (*citing Specht v. Jensen,* 853 F.2d at 809.). "An expert's testimony is proper under Rule 702 if the expert does not attempt to define the legal parameters within which the jury must exercise its fact-finding." *Id*. Though an expert may testify about how the law applies to a certain set of facts, an expert may not offer opinions on ultimate issues (whether the law was complied with) without explaining how he reached his conclusions. *TBL Collectibles, Inc. v. Owners Ins. Co.*, 285 F. Supp. 3d 1170, 1186 (D. Colo. 2018) (*citing United States v. Richter*, 796 F.3d 1173, 1195-96 (10th Cir. 2015) for the proposition that "an expert may not simply tell the jury what result it should reach without providing any explanation of the criteria on which that opinion is based or any means by which the jury can exercise independent judgment").

### A. *Mr. Sands Fails to Provide Necessary Foundational Authority for his Opinions*

Fed. R. Civ. P. 26(a)(2)(B) governing retained expert disclosures requires that such experts provide a report containing 1) a complete statement of all opinions the witness will express and the basis and reasons for them, as well as 2) the facts or data considered by the witness in forming their opinions. Expert opinions must have "a traceable, analytical basis in objective fact." *Bragdon v. Abbott*, 524 U.S. 624, 653 (1998). A bad faith expert's failure to explain how her review of case documents, in light of applicable industry standards, informed her opinions may properly render the expert unreliable (and therefore inadmissible at trial) as a matter of law. *See Haynes v. Transamerica Corp.*, 16-CV-02934-KLM, 2018 WL 4360444, at *5 (D. Colo. 2018); Fed. R. Evid. 702(c); *see also Etherton v. Owners Ins. Co.*, 10-CV-00892-PAB-KLM, 2013 WL 68702, at *3 (D. Colo. Jan. 7, 2013) (expert opinions offering legal conclusions untethered to a cognizable legal standard deemed inadmissible).

Mr. Sands stated a number of conclusions supporting Allstate, including opinions that Allstate's claim investigation, evaluation and negotiations complied with industry standards. **Exhibit 1** at pp. 20-26. However, in discussing such opinions in his reports, Mr. Sands not only fails to explain *how* Allstate's actions were in compliance with insurance industry standards, Mr. Sands failed to even *identify* any applicable insurance industry standards (other than the inapplicable DOI regulation discussed below) on which he relied in reaching those ultimate conclusions. *See id*. As disclosed, Mr. Sands' opinions are substantiated by nothing other than him saying so (*ipse dixit*), leaving the Court, the jury and Plaintiff without the means necessary to evaluate or impeach (if appropriate), thereby prejudicing Plaintiff in her ability to respond, and posing a substantial risk of a verdict on an improper basis at odds with Colorado law.

5

As further example, Mr. Sands dedicates a section of his report to the legal conclusion that "this claim presents a fairly debatable value dispute; not unreasonable delay or unreasonable conduct." **Exhibit 1** at p. 29. In reaching this conclusion, Mr. Sands fails to identify any specific facts applicable to this conclusion, let alone any explanation as to how he reached it or how industry standards support his conclusion. *Id*. at pp. 29-31. Instead, he dedicates two and a half pages of his report to discussion of a legal treatise, two extra-jurisdictional cases (one from a Utah state court—Prince, and one from an Iowa state court – *Bellville*), and his own *ipse dixit* about what he thinks the effect of a claim being deemed "fairly debatable" is, that is at odds with Colorado law. *Sanderson v. American Family Mut. Ins. Co.*, 251 P.3d 1213, 1218 (Colo. App. 2010) ("fair debatability is not a threshold inquiry that is outcome determinative as a matter of law, nor is it both the beginning and the end of the analysis in a bad faith case"); *see also Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1226-27 (10th Cir. 2016). If there is one thing clear under Colorado law, the phrase "fairly debatable" is a complete irrelevancy. Mr. Sands does nothing to apply these purported standards to any of the facts of this case, but nonetheless reaches the unsupported conclusion that "Allstate complied with industry standards." *Id*. at 31. "[W]ithout any independent knowledge of what the evidence supporting [an expert's] opinions actually consists, the court (and ultimately the factfinder) is left simply to trust [the expert's] assurance that he in fact based his opinions on relevant, reliable, and sufficient evidence." *Troudt v. Oracle Corp.*, 16-CV-00175-REB-SKC, 2019 WL 1398053 at *3 (D. Colo. 2019) (finding it would be an abuse of the Court's gatekeeping function under F.R.E. 702 to allow such unsupported opinions at trial); *See also, Meek v. Allstate Fire & Cas. Ins. Co.*, 17-CV-00606-NYW, 2018 WL 2301853, at *11 (D. Colo. 2018).

6

> B.    *Mr. Sands' Opinions Usurp the Function of the Court in Instructing the Jury on the Applicable Law, and Usurp the Function of the Jury in Offering his Lay Opinions as to how the Jury Should Interpret Certain Facts*

Magistrate Judge Boland explained in *Baumann v. Am. Family Mut. Ins. Co*. that a party's bad faith expert's opinions "phrased in terms of a legal duties or obligations…improperly usurp[s] the function of the trial judge to instruct the jury on the law."  836 F. Supp. 2d 1196, 1202 (D. Colo. 2011) (noting that perhaps expert opinion in relation to industry standards as testimony concerning ordinary practices or trade customs in an industry is admissible "to enable the jury to evaluate the conduct of the parties as against the standards of ordinary practice," but the expert failed to do so); *see also Specht*, 853 F.2d at 807-09.

Throughout both of his reports, Mr. Sands' opinions invade the province of both the Court and the jury.  Mr. Sands first attempts to offer his own summary interpretation of applicable law in Colorado in insurance bad faith litigation.  Mr. Sands provides an eight-page dissertation on what he calls "Insurance Industry Standards" in which he outlines various cases and posits several of his own unsubstantiated legal maxims.  **Exhibit 1** at pp. 11-19.  However, Mr. Sands fails to provide any explanation as to how these purported industry standards apply to this case, and as discussed above, fails to substantiate many of the purported industry standards. Neither in his "Conclusions and Opinions" section nor the "Summary of Pertinent Facts" does he attempt to apply these "standards" to the operative facts at issue.  *See* **Exhibit 1** at pp. 5-11; 19-31. Not only are many of these purported maxims not reflective of Colorado law, but are based upon nothing more than Mr. Sands' own *ipse dixit*, and are maxims specifically rejected by our Courts, like the comment on "fair debatability." If Mr. Sands were allowed to testify as to these unsupported "Insurance Industry Standards" at trial that he fails to relate to the factual disputes at

7

issue, such testimony would do nothing more than confuse the jury about what law to apply and what issues they are to decide. *Specht* at 809. Such invasion of the province of the Court is improper as a matter of law, and must be precluded at trial. *Id*. at 810.

Moreover, Mr. Sands included a plethora of opinions in his report that are directly at odds with orders from multiple Courts in this District precluding expert opinions phrased in terms of legal duties and obligations. *Baumann*, 836 F. Supp. 2d at 1202; *Etherton*, 2013 WL 68702 at *2, *Slavin v. Garrison Property and Casualty Ins. Co.*, 14-CV-01839, 2017 WL 2928030 at *9 (D. Colo. 2017). Duty is a pure question of law. *Lannon v. Taco Bell, Inc.*, 708 P.2d 1370, 1373 (Colo.App. 1985). Any opinion describing anyone's "duty" is prohibited by *Specht*. For example, Mr. Sands asserts that an insurer has "no duty" to disclose the range of its evaluation (**Exhibit 1** at pp. 15-16); that an insurer owes a duty to all policyholders and itself to pay only meritorious claims and then only the amount owed (**Exhibit 1** at p. 14); that when an attorney cooperates and represents that she will provide relevant information, the insurer has a right to rely upon that representation (i.e. that the insurer is then relieved of its non-delegable *statutory* "duty" to investigate) (**Exhibit 1** at p. 21); that insurers have a contractual right to obtain an authorization for release of medical or other information from third parties, and insured must cooperate and provide such authorization when reasonably sought (**Exhibit 1** at p. 22); that if a UIM insurer agrees that the value (not settlement ranges of value) of a claim exceeds the amount of the available policy limit, the UIM insurer should not await exhaustion of the liability limit before paying what it agrees is owed in UIM benefits (**Exhibit 1** at p. 23); and that there is no duty to even negotiate settlement of a UIM claim if there is a genuine dispute over the value of the claim (**Exhibit 1** at pp. 30-31). These assertions of respective parties' legal obligations

8

("duties") are not framed as insurance industry standards, but rather as legal duties in a way that improperly usurps the function of the Court to instruct the jury. *Baumann*, 836 F. Supp. 2d at 1202. The same is true of any legal maxims for which Mr. Sands does provide authority—such maxims must be presented only by jury instructions to avoid confusion. *Specht*, 853 F.2d at 809.

Mr. Sands then goes on to extensively usurp the function of the jury by offering opinions as to how they should interpret certain facts and conclusions that they should draw from those facts (and not in relation to any applicable industry standards). Expert opinions containing factual conclusions about which the jury will hear evidence and is qualified to make its own determination do not assist the jury. *Baumann*, 836 F. Supp. 2d at 1203. Rather, such opinions ""direct a verdict," creating a risk of both confusion and prejudice." *Etherton*, 2013 WL 68702 at *2 (*citing Specht*, 853 F.2d at 808-09). This issue is illustrated best by Mr. Sands' "rebuttal" report. In that report, Mr. Sands dedicates 3 ½ pages to outlining his interpretation of a number of facts without invoking any of his purported "scientific, technical, or other specialized knowledge," but rather his lay interpretation of and commentary on certain facts aimed at supporting Allstate's narrative. Simply put, "facts" neither need nor are allowed to be established by anyone's opinion. Mr. Sands states in his rebuttal report that "The following facts are apparent from my review of this file[,]" and then goes on to itemize "facts" such as "Ms. LaCrue made repeated representations to Allstate,[1] beginning with her letter of representation dated March 12, 2015, that she would provide medical billing information," "Ms. LaCrue represented to Allstate that she was ordering all bills and records as of March 27, 2015," and "By letter dated August 21, 2015, Ms. LaCrue supplemented her demand and provided billing records

9

form [sic] Orthopedic Associates (a "fact" to be shown to the jury), showing her ability to obtain that information from the doctors' office, and her continuing willingness to provide the information to Allstate," (an opinion on Ms. LaCrue's conduct beyond his expertise and invading the jury's function). This makes no sense, as it was clear that Allstate was asking what damage component Ms. Cribari was claiming for future medical care." **Exhibit 2** at pp. 3, 5.  Mr. Sands' own lay commentary and interpretation of these highly disputed issues of fact do nothing to aid the jury in their fact-finding function, and must be excluded under F.R.E. 702.

### C. Mr. Sands' Unsupported Ipse Dixit Opinions should be Stricken

"Neither Rule 702 nor Daubert "requires a district court to admit opinion evidence that is connected to the existing data only by the *ipse dixit* of the expert.  A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."" *Etherton v. Owners Ins. Co.*, 829 F.3d 1209, 1218 (10th Cir. 2016) (*quoting Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997)); *Troudt v. Oracle Corp.*, 16-CV-00175-REB-SKC, 2019 WL 1398053, at *3 (D. Colo. 2019) ( "[w]hatever may have been the standard in the pre-*Daubert* era, it is clear that an expert's opinions are not admissible merely because the expert says, in effect, 'trust me, I know.' ... It does not suffice for him to simply invoke experience or judgment without more.").

Here, many of Mr. Sands' opinions are wholly unsupported by any meaningful reference to or application of controlling Colorado law or applicable insurance industry standards, but rather only his own *ipse dixit* of what Mr. Sands thinks the law is (sometimes correct, other times not) or should be.  For instance, Mr. Sands offers the following opinions without citing ***any***

supporting authority, again framed primarily in terms of "duty", "rights", and "obligations":

- Insurers owe all of the insureds the *duty* to pay only meritorious claims and to neither underpay nor overpay claims. **Exhibit 1** at p. 14.
- When an attorney cooperates and represents that she will provide relevant information, the insurer has a *right* to rely upon that representation. **Exhibit 1** at p. 21.
- Insurers have a contractual *right* to obtain an authorization for release of medical or other information from third parties. **Exhibit 1** at p. 22.
- Neither a recorded statement nor a personal meeting is *required* by industry standard. (10th Circuit has ruled that failure to do so *may* be evidence of bad faith. *Peden v State Farm Mut. Auto. Ins. Co.,* 841 F.3d 887, 891-93 (10th Cir. 2016)). **Exhibit 1** at p. 22.
- The industry standard is that value disputes do not rise to the level of unreasonable conduct or bad faith. (Contrary to current law) **Exhibit 1** at p. 29.
- There is no *duty* to even negotiate settlement of a UIM claim if there is a genuine dispute over the value of the claim. **Exhibit 1** at pp. 30-31.
- It is unreasonable for lawyers to hold claim representatives to a standard to which they cannot be held themselves. (Opinion on legal malpractice without any certificate of review; and irrelevant) **Exhibit 1** at p. 31.
- It is not legal malpractice for a personal injury attorney to be "wrong" in his or her best evaluation as to what will happen as long as the attorney complied with the standard of care; it is not insurance bad faith for a claim representative to be "wrong" in attempting to evaluate a claim with a view to the same end: what will a finder of fact believe the claim is worth? (Opinion on legal malpractice without any certificate of review; and irrelevant) **Exhibit 1** at p. 31.
- In this industry, "investigation" often means that the attorney representing the insured has agreed to provide relevant medical records and billings, and the insurer must "investigate" by reviewing and analyzing the information provided. It does not mean that the insurer *has to* ("duty") go out into the universe to obtain information that the insured has an *obligation* ("duty") to provide in the first instance.[2] **Exhibit 2** at p. 2.

While some of these points may accurately reflect Colorado law, they lack sufficient basis

to satisfy the requirements of F.R.E. 702. *See Haynes*, 2018 WL 4360444 at *5. Moreover, in

addition to being properly excluded under F.R.E. 401, 403 and 702 considerations, this lack of

---

[2] This opinion is particularly egregious as the scope of an insured's "obligation" is maybe the most contentious disagreement in this case (which cooperation clause applies here) and will be the specific subject of this Court's instructions.

11

supporting authority also requires Mr. Sands' opinions to be stricken for improper disclosure in accordance with Fed. R. Civ. P. 26(a)(2)(B).  As the 10th Circuit has recognized for almost 40 years, "advance knowledge . . . of an expert witness's basis for his opinion is essential for effective cross-examination."  *E.g., Smith v. Ford Motor Co.*, 626 F.2d 784, 793 (10th Cir. 1980).

## II.     Mr. Sands Offers Improper Opinion Regarding Colorado Division of Insurance Regulation 5-1-14

In his report, Mr. Sands makes multiple improper references to Colorado Division of Insurance Regulation 5-1-14 to support his opinions regarding Allstate's conduct, ultimately concluding that no insurer has any duty to pay a claim until *it* decides it has a "complete" claim.  In a truly landmark decision (which decided a particular industry standard of not paying claims "piecemeal" was unreasonable as a matter of law) *Fisher v. State Farm Mutual Automobile Insurance Company*, State Farm (through its counsel, Mr. Sands) attempted to argue that Colorado Division of Insurance Regulation 5-1-14 provided support for its argument that it was not obligated to pay benefits to Fisher because it had not received a "valid and complete claim" at the *time that litigation was initiated*.[3]  419 P.3d 985, 991 (Colo. App. 2015), *aff'd*, 418 P.3d 501 (Colo. 2018).  First, this opinion contradicts the law—it is now clear an insurer must pay a claim "piecemeal" if the jury determines it is reasonable to do so. The Colorado Court of Appeals (affirmed by our Supreme Court) rejected State Farm's argument for several reasons.  First, Regulation 5-1-14 simply has *no* application to a civil action pursuant to C.R.S. 10-1-1115 as Regulation 5-1-14 "applies only to administrative penalties assessed by the Commissioner of Insurance pursuant to

---

[3] This is particularly troubling in this case, as the evidence will show Allstate has a specific model for *requiring* litigation if the insured refuses its "settlement" offer. To use required compliance with a contract as an excuse to not perform contractual or statutory duties is

12

the Commissioner's statutory authority to regulate the insurance industry." *Id*. Second, Regulation 5-1-14 does not define the term "valid and complete claim," but instead provides that a valid and complete claim is deemed received by the insurer when factors under Regulation 5-1-14(4)(A)(2)(a) were satisfied. *Id*. at 991-92. "None of these factors address…whether an insured's demand for payment on one component of a UIM claim is sufficient in and of itself such that an insurer has an obligation to not unreasonably delay or deny paying benefits under section 10-1-1115." *Id*. at 992. In other words, it does not appropriately define the law applicable to insurers in this type of case. Finally, though administrative regulations may be used as valid evidence of insurance industry standards, when a statute defines a standard of reasonableness, as does C.R.S. 10-1-1115, an administrative regulation may not modify or contradict that standard. Even a recognized standard of care is at best a presumption, which can be contradicted by public policy or evidence of the unreasonableness of that very standard. *United Blood Servs., a Div. of Blood Sys., Inc. v. Quintana*, 827 P.2d 509, 521 (Colo. 1992).

Under Colorado law, "any regulation which is inconsistent with or contrary to a statute is void and of no effect." *Miller Int'l, Inc., v. State*, 642 P.2d 341, 344 (Colo. 1982). The definition of reasonable dispute contained in the regulation is contrary to Colorado law in that literally every Colorado state court decision interpreting the issue agrees that the filing of a lawsuit does not absolve an insurer of bad faith liability. *E.g. Vaccaro v. American Family Ins. Group*, 275 P. 3d 750, 756 (Colo. App. 2012) *citing Bankr. Estate of Morris v. COPIC Ins. Co.*, 192 P.3d 519, 524 (Colo. App. 2008) ("[T]he common law tort of bad faith breach of insurance contract encompasses all of the dealings between the parties, including conduct occurring before, during

unreasonable, against public policy, and would incentivize insurers to "lowball" insureds.

and after trial."). *See also Southerland v. Argonaut Insurance Co.*, 794 P.2d 1102 (Colo. App. 1990); *Dale v. Guaranty National Insurance Co.*, 948 P.2d 545 (Colo. 1997). The definition would also conflict with C.R.S. § 10-3-1104(1)(h)(VII), which expressly prohibits an insurer from "compelling insureds to institute litigation to recover amounts due under an insurance policy by offering amounts substantially less than the amounts ultimately recovered in actions brought by such insureds." This prohibition, which is supposed to be considered by a jury in evaluating a claim for bad faith (*see* C.R.S. § 10-3-1113(4)), precludes application of a rule that the filing of a lawsuit absolves an insurer from bad faith liability or provides a "reasonable basis" to refuse to pay an insurance claim. Reference to that regulation would be unfairly prejudicial under C.R.E. 403. The regulation should be mentioned only if the Court so instructs the jury, and not by an attorney/expert. *Specht,* 852 F.2d at 810.

Additionally, the regulation is irrelevant to this litigation ***as it was never disclosed as having been used by any person in the investigation of Plaintiff's claim,*** nor is it ever mentioned in ***any*** purported adopted or implemented standards disclosed by Allstate, as required by Rule 26. *See* ALLSTATE'S RESPONSES TO PLAINTIFF'S FIRST SET OF DISCOVERY, **Exhibit 3** at p. 2. It would be unfairly prejudicial and untruthful for Allstate to be permitted to present evidence at trial that the regulation was in any way a factor in its claims decisions in this case. A claim for insurance bad faith "must be evaluated based on the information before the insurer at the time of that decision." *Peiffer v. State Farm Mut. Auto. Ins. Co.*, 940 P.2d 967, 970 (Colo. App. 1996). Likewise, "when a party to a contract has refused to comply with the contract on a particular basis, any other possible basis for refusal is waived." *Id.*; *Colard v American Family,* 709 P.2d 11 (Colo. App. 1985). Here, Allstate never used or relied upon the regulation in resisting the claim.

### III. Mr. Sands Cannot Offer Attorney Standard of Care Opinions as he has not Been Properly Disclosed to Offer such Opinions

Throughout his reports, Mr. Sands offers a number of *attorney* standard of care opinions, as well as opinions regarding the regular business practices of personal injury attorneys, despite the fact that he has not been disclosed to offer such opinions. Rather, Mr. Sands was disclosed by Allstate as an expert in insurance and bad faith law. DEFENDANT'S INITIAL FED.R.CIV.P. 26(A)(2) EXPERT DISCLOSURES, **Exhibit 4** at pp. 1-2. Nevertheless, Mr. Sands offers the following opinions:

- It is extremely common for insureds' attorneys to make policy limits demands. **Exhibit 1** at p. 17.
- It is unreasonable for lawyers to hold claim representatives to a standard to which they cannot be held themselves. **Exhibit 1** at p. 31.
- It is not legal malpractice for a personal injury attorney to be "wrong" in his or her best evaluation as to what will happen as long as the attorney complied with the standard of care[4]; it is not insurance bad faith for a claim representative to be "wrong" in attempting to evaluate a claim with a view to the same end: what will a finder of fact believe the claim is worth? **Exhibit 1** at p. 31.
- The cost of future medical care is a factor that most attorneys are readily willing to provide. **Exhibit 2** at p. 2.

In addition to failing to disclose Mr. Sands as an expert to offer these opinions, Allstate failed to disclose (and Mr. Sands failed to explain) any bases for such opinions, or any authority or industry standards that support them. Rather, it appears that Mr. Sands is attempting to shore up the weaknesses in Allstate's case by offering *ipse dixit* on what he thinks the law is or what normal business practices are for personal injury attorneys (which, according to his CV, he has never been) with nothing more than his "expert" credentials ensuring he will be presented to the jury "as imbued with all the mystique inherent in the title "expert."" *Specht*, 853 F.2d at 809.

---

[4] This is simply untrue. An attorney may commit "legal malpractice" by being wrong; they are

Dated this 13th day of May, 2019.

                              Respectfully submitted,

                              *s/ Marc R. Levy*
                              Marc R. Levy
                              Matthew W. Hall
                              Ryan E. Nichols
                              LEVY LAW, P.C.
                              6465 Greenwood Plaza Blvd., Suite 650
                              Englewood, CO  80111
                              Phone: (303) 796-2900
                              Fax: (303) 796-2081
                              Email: mlevy@levytrial.com
                                              rnichols@levytrial.com
                                              rnichols@levytrial.com

                              *Attorneys for Plaintiff*

---

called "settle and sue" cases, and undersigned has handled many for the defense of attorneys.

16

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:16-cv-02450-NRN

BEVERLY CRIBARI,

Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

Defendant.

---

**CERTIFICATE OF SERVICE**

---

I hereby certify that on May 13, 2019, I electronically filed the foregoing **MOTION TO STRIKE DEFENDANT ALLSTATE'S EXPERT JON SANDS PURSUANT TO F.R.E. 702** with the Clerk of Court for filing and uploading to the CM/ECF system which will send notification of such filing to the following e-mail address:

| | |
|---|---|
| DezaRae D. LaCrue, #40290<br>Franklin D. Azar & Associates, P.C.<br>14426 East Evans Avenue<br>Aurora, CO  80014<br>lacrued@fdazar.com<br><br>*Attorney for Plaintiff* | Kurt H. Henkel<br>Winslow R. Taylor, III<br>Tucker Holmes, P.C.<br>Quebec Centre II, Suite 300<br>7400 E. Caley Avenue<br>Centennial, CO  80111-6714<br>khh@tucker-holmes.com<br>wrt@tucker-holmes.com<br><br>*Attorneys for Defendant* |

*s/ Marc R. Levy*
Marc R. Levy

17