IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 16-cv-02450-NRN

BEVERLY CRIBARI,

Plaintiff,

v.

ALLSTATE FIRE & CASUALTY INSURANCE COMPANY,

Defendant.

## ORDER ON OUTSTANDING MOTIONS IN LIMINE

**Entered by Magistrate Judge N. Reid Neureiter**

This matter is before the Court on a number of outstanding motions in limine, filed by both parties. On June 5, 2019, I held a two and a half hour trial preparation conference where I tried to get through as many of the outstanding motions in limine as possible, ruling from the bench on some, reserving other decisions for trial, and taking others under advisement.

This Order addresses the remaining motions in limine and clarifies certain rulings to the extent I was not clear at the June 5, 2019 hearing.

### Background

This is an insurance bad faith lawsuit brought by an insured, Ms. Cribari, against her insurer, Allstate, for breach of contract and unreasonable delay or denial in paying an uninsured motorist claim, after Ms. Cribari suffered injuries from a car accident.

Mrs. Cribari made a claim for underinsured motorist benefits under her Allstate policy, which has a limit of $250,000. Allstate initially did not pay the claim, and this lawsuit followed. Mrs. Cribari claims in this lawsuit that her damages in fact exceed the

1

amount paid by the negligent motorist, and Allstate breached her contract of insurance by not paying any benefits, that Allstate unreasonably delayed and denied payment of her insurance claim, and that it further acted unreasonably and in bad faith. While Allstate previously denied that Mrs. Cribari's damages met or exceeded the $250,000 in available underinsured motorist benefits, it recently changed its position and agreed that the claim is worth that full amount. Allstate sent Ms. Cribari a check for $250,000 under a reservation of rights. Allstate has reserved the right to recoup the $250,000 payment, claiming that Ms. Cribari has forfeited her benefits under the policy because she failed to cooperate in the investigation of her claim.

Allstate denies that it breached the contract, unreasonably delayed or denied payment of the claim, or otherwise acted in bad faith. Allstate asserts that while Mrs. Cribari's damages from the accident do exceed the limit of her underinsured motorist insurance policy, it is not obligated to pay this amount because Mrs. Cribari failed to cooperate in Allstate's investigation. Allstate's theory is that Ms. Cribari failed to cooperate by not providing all the necessary information so as to bring a bad faith lawsuit to obtain the additional penalties and attorneys' fees that Colorado law provides for insureds whose insurance benefits have been unreasonably delayed or denied. This has been called the "set up" argument—that Ms. Cribari "set up" Allstate for a bad faith lawsuit by intentionally withholding information that would have allowed Allstate to evaluate the claim fairly and promptly.

I previously addressed each sides' respective motions for summary judgment. In my order denying summary judgment. *See* Dkt. #137. I found that there was sufficient evidence from which a reasonable jury could conclude that Allstate acted unreasonably and unreasonably delayed or denied payment. I also found that there was

2

evidence from which a reasonable jury could conclude that Ms. Cribari failed to cooperate in the investigation of the claim.

**Legal Standards on Motions in Limine**

Motions in limine exist outside of the Federal Rules of Civil Procedure and Federal Rules of Evidence and serve to enable the court "to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." *United States v. Cline*, 188 F. Supp. 2d 1287, 1291 (D. Kan. 2002) (quoting *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (further citations omitted)). Pre-trial rulings issued in response to motions in limine can save time during trial as well as cost and effort for the parties as they prepare their cases. However, "a court is almost always better situated during the actual trial to assess the value and utility of evidence." *Koch v. Koch Industries, Inc.*, 2 F. Supp. 2d 1385, 1388 (D. Kan. 1998) (citing *Hawthorne Partners v. AT & T Technologies, Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993) ("Unless evidence meets this high standard [of clearly inadmissible], evidentiary rulings should be deferred until trial so that questions of foundation, relevancy and potential prejudice may be resolved in proper context.")). With these principles in mind, I turn to the outstanding motions in limine.

- **Dkt. #147—Allstate's Motion in Limine re: Other Claims or Litigation.**

Allstate is fearful that Plaintiff will seek to introduce evidence of claims handling by Allstate in other cases that "have nothing to do with the facts of this case." Therefore, Allstate seeks to preclude evidence of other claims or litigation, arguing that it would cause undue confusion of the jury and excessively complicate matters leading to spinoff arguments about whether Allstate's conduct in other cases has been proper or not.

3

The Plaintiff seeks to introduce evidence from other claims or litigation involving Allstate for two distinct purposes. Plaintiff first says that it is Allstate's pattern or practice to raise the "failure to cooperate" defense with respect to many insureds and the raising of this defense with "exceedingly high frequency" is relevant to Allstate's allegedly baseless raising of the defense in this case. Second, the Plaintiff says that evidence from other cases may be appropriately used to impeach Allstate's witnesses about what may or may not be feasible in terms of investigating a claim. For example, if Allstate

As stated at the June 5, 2019 hearing, I **GRANT Dkt. #147** with respect to other claims or litigation which are intended to show it is Allstate's pattern or practice to raise the failure to cooperate defense. *This* case is (in part) about whether Mrs. Cribari failed to cooperate or not. It is not about whether Allstate has raised (legitimately or not) this defense in other cases, or whether the plaintiffs in those other cases failed to cooperate or not.

With respect to whether material or evidence from other claims or Allstate litigation may be used for impeachment purposes, I **DENY without prejudice Dkt. #147 and will reserve for trial the issue of admissibility of specific evidence that may be used for impeachment purposes.**

- **DKT. #148—Allstate's Motion in Limine to Allow Presentment of C.R.S. Section 10-3-1116 Damages to the Jury.**

Allstate seeks to introduce to the jury the fact of the additional damages available to a plaintiff in an unreasonable delay or denial case—two times the covered benefit plus attorneys' fees. *See* Colo. Rev. Stat. §10-3-1116(1). According to Allstate, allowing evidence of what would be available to the Plaintiff (and her counsel) in the

4

event that the jury finds unreasonable delay is important to show the motivation the Plaintiff might have in not cooperating with Allstate's investigation of her claim. Per Allstate's argument, this evidence is important to prove the motive the Plaintiff (or her attorney) had to "set up" Allstate for bad faith litigation.

Plaintiff responds that there are a number of reported decisions that explain that telling the jury of the availability of treble damages or additional statutory damages is improper and denies a plaintiff the right to a fair and impartial jury. *See, e.g.*, *Heritage Village Owners Assoc. v. Golden Heritage Investors, Ltd.,* 89 P.3d 513, 518 (Colo. App. 2004) (agreeing that information about treble statutory damages under CCPA is "not only irrelevant to the jury's performance of its function, but such knowledge likely will be prejudicial to the plaintiff while at the same time thwarting the legislative intent of requiring exemplary damages"); *Cassareto v. GEICO Cas. Co.,* No. 16-cv-285-MEH, 2017 WL 7693513 (D. Colo. May 26, 2017) ("[T]he Court agrees statutory penalties are not relevant to the issues the jury must decide."); *Seidman v. Am. Family Mut. Ins. Co.*, No. 14-cv-03193-WJM-KMT, 2016 WL 8201768, at *3 (D. Colo. Sept. 13, 2016) ("[T]he statutory penalty is not relevant to the jury's deliberations. The jury need only determine the amount of the delayed or denied benefit."); *Toy v. Am. Family Mut. Ins. Co.*, 2014 WL 486173, at *1 (D. Colo. Feb. 6, 2014) (discussion of the penalty "may tend to confuse or prejudice a jury into reducing its eventual award").

I agree that discussion of the specific amount of the statutory penalty may tend to confuse the jury or prejudice the jury into improperly reducing its eventual award. However, in this case, I also agree that there is relevance to the issue of the statutory damages because it goes to the motive the Plaintiff might have had to withhold

5

information and not cooperate in Allstate's investigation. It is part of Allstate's claim that this was a "set-up" by the Plaintiff in order to bring a bad faith lawsuit.

Balancing these two competing concepts, I **GRANT IN PART AND DENY IN PART DKT. #148** as follows: I intend to instruct the jury that a finding in favor of the Plaintiff on the unreasonable delay or denial claim will result in the Court "awarding an additional damage amount to the Plaintiff and against Allstate based on the amount of the benefit that was unreasonably denied or delayed, as provided by Colorado law." There shall be no mention of attorneys' fees or the specific amount of the additional damage award, other than to say it is "an additional amount, based on the amount of the benefit that was unreasonably delayed or denied, as provided by Colorado law." With this instruction in mind, Allstate will be able introduce into evidence that success on the unreasonable delay or denial claim will result in an additional damage amount to be awarded by the Court as provided by Colorado law.

Instructing the jury as described will provide evidence of motive the Plaintiff may have had to not provide all requested information, while not unfairly prejudicing the Plaintiff about the specific amount of the additional damage award, or confusing the jury about issues of attorneys fees.

- **Dkt. #149—Plaintiff's Motion in Limine re: F.R.E. 408 Offers.**

Plaintiff seeks an order barring evidence that Allstate made various offers of settlement of the claim prior to litigation. Plaintiff also wants to keep out evidence that Allstate has actually tendered a $250,000 check (with an accompanying reservation of rights). Plaintiff bases its motion on Fed. R. Evid. 408.

Allstate responds that Rule 408 bars settlement offers from evidence only when they are offered to prove or disprove the validity or the amount of the disputed claim.

6

Fed. R. Evid. 408(a). However, evidence of settlement negotiations, including offers of compromise, are admissible for other purposes, including negating a contention of undue delay or unreasonable conduct. *See Towerridge, Inc. v. T.A.O., Inc.*, 111 F.3d 758, 770 (10th Cir. 1997) (citing Rule 408 and noting that the Rule only bars admission for the "forbidden purpose" of proving liability for or invalidity of the claim or its amount).

Allstate argues that it should be allowed to introduce evidence of pre-litigation offers to settle the UIM claim because it rebuts allegations that it failed to act reasonably, or otherwise unreasonably delayed in resolving the claim. These are not for the "forbidden purpose" laid out in Rule 408.

Plaintiff's Motion in Limine **#149 is DENIED**. The Court will assess the admissibility of specific pieces of evidence regarding offers of compromise at the time of trial and rule based on the purpose for which the evidence is being offered. To the extent that an appropriate limiting instruction is requested with respect to these offers of compromise, the Court would welcome suggestions as to the appropriate language.

- **Dkt. #151—Plaintiff's Motion in Limine to Preclude Reference to Effect of Finding that Allstate Unreasonably Delayed or Denied Payment of Insurance Benefits.**

This motion by Plaintiff Cribari is the flip-side of Allstate's Motion in Limine, Dkt. #148 on allowing evidence of statutory damages. Plaintiff seeks to preclude reference to the statutory damages permitted plus attorneys fees. My ruling will be the same as for Dkt. #148.

I **GRANT IN PART and DENY IN PART DKT. #151** as follows: I intend to instruct the jury that a finding in favor of the Plaintiff on the unreasonable delay or denial claim will result in the Court "awarding an additional damage amount to the Plaintiff and against Allstate based on the amount of the benefit that was unreasonably denied or

7

delayed, as provided by Colorado law." There shall be no mention of attorneys' fees or the specific amount of the additional damage award, other than to say it is an additional amount, to be awarded by the Court as provided by Colorado law.

- **Dkt. #152—Plaintiff's Motion in Limine to Preclude Allstate from Offering Evidence as to its Reasoning for Recently Paying the $250,000 Policy Limit.**

Plaintiff seeks to prevent Allstate from offering evidence or argument (1) that it "paid" $250,000 to the Plaintiff; and (2) attempting to explain why it recently acknowledged that Plaintiff's UIM claim was worth at least $250,000. Plaintiff claims that because the $250,000 check was accompanied by a reservation of rights letter expressing an intent to claw back the payment if non-cooperation is found by the jury, then the Plaintiff was never really "paid" the money, because she cannot spend it with impunity. Plaintiff further argues that any probative value of such evidence of payment is substantially misleading or confusing the jury. In Plaintiff's view, Allstate should not be permitted to tell the jury that it "paid" anything to the Plaintiff. Dkt. #152 at 2.

Plaintiff additionally argues that Allstate should not be permitted to introduce evidence of the $250,000 "payment" or any explanation therefore because the $250,000 payment was made only recently, and Plaintiff had requested the ability to conduct limited discovery into the issuance of the check, including the reasons for Allstate's change of position on the value of Plaintiff's claim. But no further discovery was permitted.

In response, Allstate notes that this "motion in limine" is in effect a request for a discovery sanction – the barring of evidence that recently developed because of the inability to obtain discovery. Allstate also suggests that if Plaintiff truthfully believes the

money has not actually been paid because of the reservation of rights associated with it, then Plaintiff is free to argue that point to the jury.

I agree with Allstate. Allstate's recent payment (years after the accident in question) along with the reservation of rights letter, (which arguably limited the Plaintiff's ability to spend the money) is part of the story of this dispute, and the jury will be able to assess the payment and the reservation of rights, all in the context of the two competing theories of the case. Plaintiff's counsel will have the ability and right to cross-examine any Allstate witness who seeks to explain the reason for the delayed payment and the apparent change in position on the evaluation. Accordingly, **Plaintiff's Dkt. #152 is DENIED.**

- **Dkt #153—Allstate's Motion in Limine re: Litigation Conduct as Evidence of Bad Faith.**

Allstate seeks to preclude evidence of attorney litigation conduct as evidence of bad faith. Citing *Parsons v. Allstate Ins. Co.*, 165 P.3d 809 (Colo. App. 2006), Allstate argues that the litigation conduct of its attorney is of only marginal relevance, lacks any identifiable probative value, and is unduly confusing to the jury. The intent of this particular motion in limine is, therefore, "to preclude Plaintiff's counsel from commenting on attorney conduct and discovery proceedings in this case, motions practice, and what witnesses may think of Allstate's counsel." Dkt. #153 at 3.

Per the *Parsons* case, the focus of a bad faith claim in Colorado is on the decision to refuse to make or to delay making payments owed under an insurance policy. Therefore, "the relevance of litigation conduct by an attorney after the refusal or delay has occurred may be limited." 165 P.3d at 817.

9

However, the *Parsons* cases also points out that unfair practices listed in Colo. Rev. Stat. §10-3-1104(1)(h) may be used as evidence of acceptable industry standards in a bad faith case, and some of the listed practices could implicate conduct occurring after litigation has begun, "such as not attempting to effectuate a prompt, fair, and equitable settlement once liability has become reasonably clear," or "attempting to settle a claim for less than a reasonable amount based on the insurance application." *Id*. While these statutory factors might form the basis for the admission of some kinds of evidence of an insurer's post-filing settlement conduct, they do not address others, "such as many acts attorneys take in the course of litigation." *Id*.

In contrast to post-litigation conduct by the insurer, "[a]llowing evidence of attorney litigation conduct as proof of bad faith as a general rule could result in ethical dilemmas for attorneys representing insurance companies. Arguably, they would be forced to withdraw from representing their clients if they were likely to become necessary witnesses." *Id*. *Parsons* also highlights the danger of allowing evidence of *attorney* litigation conduct for proving an insurer's bad faith, because it "could involve attempts to obtain or introduce information protected by the attorney-client and work-product privileges." *Id*.

Plaintiff's response argues, first, that Allstate's motion on this subject is overbroad, and too fact intensive for a blanket order. Second, Plaintiff argues that post-litigation conduct by an insurer is relevant to the jury's determination of bad faith or unreasonable delay, in part because the insurer's duty of good faith and fair dealing continues as long as the insurer-insured relationship exists. *See Travelers Ins. Co. v. Savio*, 706 P.2d 1258, 1268 (Colo. 1985) (duty of good faith "permeates all of the dealings between the parties"); *Dale v. Guaranty Nat. Ins. Co.*, 948 P.2d 545, 552 (Colo.

10

1997) ("[C]laims of insurance bad faith may encompass all of the dealings between the parties, including conduct occurring after the arbitration procedure.").

The *Parsons* case draws a distinction between the post-litigation conduct of the insurer versus the insurer's outside counsel. Judge Martinez in *Fiechtner v. Am Fam. Mut. Ins. Co.*, 09-CV-02681-WJM-MEH, 2011 WL 4087296 (D. Colo. Sept. 13, 2011) drew a similar distinction when he issued an order excluding post-litigation conduct of outside counsel ruling, "Plaintiff will not be permitted to argue that outside counsel's conduct in defending against this action was evidence of bad faith on the part of [the insurer.]" At the same time, Judge Martinez, citing *Dale v. Guar. Nat'l Ins. Co.*, 948 P.2d 545, 552 (Colo. 1997)), explicitly found that "Colorado law clearly permits introduction of evidence of post-litigation conduct as a basis for a bad faith claim." *Fiechtner*, 2011 WL 4087296 at *2. Judge Martinez thus denied the insurer's motion in limine which sought to preclude evidence of an insurer's in-house attorney's post-litigation conduct. *Id*.

Following Judge Martinez' lead in *Fiechtner* and that of the Colorado Court of Appeals in *Parsons*, Allstate's **Motion in Limine Dkt. #153 is GRANTED IN PART AND DENIED IN PART**. Allstate's motion is granted to the extent that Allstate's outside counsel's conduct *after* the filing of the Complaint (i.e., litigation conduct) shall not be used as evidence of Allstate's bad faith. Plaintiff will not be permitted to argue that outside counsel's conduct in defending against this action was evidence of bad faith on the part of Allstate.

To the extent that this motion seeks to preclude post-litigation conduct by Allstate, the motion is denied and I will reserve decision on specific post-litigation acts of Allstate for the time of trial.

11

There may appear, superficially, to be a contradiction between not allowing before the jury evidence of Allstate's counsel's litigation conduct, while simultaneously allowing evidence of Plaintiff's counsel's pre-litigation conduct in allegedly failing to provide requested information to Allstate (the so-called bad faith "set-up"). There is no contradiction. There is a difference between pre-filing and post-filing conduct, at least with respect to attorneys. And evidence of or reference to Plaintiff's counsel's litigation conduct (after the filing of the Complaint) will not be allowed into evidence either.

- **Dkt. #158: Allstate's Motion in Limine to Prevent Reference to Mediation, Issuance of Potential Settlement Check, and Settlement Negotiations.**

Allstate files this motion in limine seeking to preclude evidence that Allstate claims relates to a mediation that occurred August 14, 2017. Allstate says its personnel prepared for the mediation and there were entries in the claim file (specifically an August 12, 2017 entry) that reflected internal mediation preparation communications.

In connection with and approximately at the time of the mediation, Allstate cut a check for $250,000 which it sent on to its counsel to hold, pending analysis of whether the case would settle or not. The case was not settled and that particular $250,000 check was never forwarded on to the Plaintiff. However, Allstate later did send a letter to the Plaintiff asking why she had never cashed the check (the check that she had never received). Allstate insists that the letter was merely a computer generated mistake, that never should have been sent.

Allstate argues that all this evidence—the entries regarding Allstate's pre-mediation assessment, the fact that Allstate cut a check that was never delivered, and the letter asking the Plaintiff why she had not cashed the $250,000 check--should be kept from the jury under Rule 408 because it relates to mediation. Citing *Ramada Dev.*

*Co. v. Rauch*, 644 F.2d 1097 (5th Cir. 1981) and *Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d 521, 529-30 (3d Cir. 1995), Allstate argues that these internal notes were created for the purpose of the mediation process, and thus qualify as "statements made in compromise negotiations" which should not be admissible.

Plaintiff effectively challenges the factual basis for the motion, disputing whether the claim file entries, or the uncashed undelivered check, were "settlement communications" at all. Plaintiff also argues that to the extent that a claim file entry shows that the claim was evaluated to be worth $250,000, then the evidence is probative to refute Allstate's "failure to cooperate" defense, in that it shows that Allstate was able to effectively evaluate the claim even without the information that Allstate claims was wrongfully withheld.

I agree that there is a preliminary fact issue to be decided before any ruling on the admissibility of these discrete challenged pieces of evidence. Were the disputed claim file entries (and the uncashed check) truly settlement communications or not? If so, then the authorities cited by Allstate would seem to militate in favor of exclusion. *See Affiliated Mfrs., Inc. v. Aluminum Co. of Am.*, 56 F.3d at 529-30 (holding that Rule 408 protects internal memoranda created for, but not communicated during, settlement negotiations); *E.E.O.C. v. UMB Bank Fin. Corp.*, 558 F.3d 784, 791 (8th Cir. 2009) ("The spirit of the rule . . . supports the exclusion of certain work product, internal memos, and other materials created specifically for the purpose of conciliation, even if not communicated to the other party."). It is a fact question whether these internal communications were in fact settlement communications, and the Court must decide this threshold factual issue before deciding whether to allow the evidence before the jury.

Accordingly, the Court will **GRANT IN PART Allstate's DKT. #158**, to the extent that Plaintiff shall not make any mention of this material in opening or without further order of the Court. However, at an appropriate time before or during trial, outside the presence of the jury, Allstate must make a witness available who would be able to testify to the nature of these communications and show that they are in fact settlement or mediation-related, subject to cross-examination by Plaintiff's counsel. Only if Allstate is able to make this threshold showing will the material be kept from the jury.

- **Dkt. #162: Allstate's Motion in Limine re: Untimely Witness Designations.**

Allstate seeks to strike and bar from testifying certain witnesses that were never disclosed via Rule 26, but which Plaintiff has listed on her "may call" list. These include Raul Sanchez and Deborah Benjamin.

In response, Plaintiff insists that these witnesses, if called, would only be called for purposes of impeachment. Plaintiff also argues that impeachment witnesses (witnesses called solely to address a witness's credibility) need not be disclosed. Plaintiff alleges that Mr. Sanchez and Ms. Benjamin have provided testimony in other cases that "directly contradicts the testimony of witnesses Allstate intends to call to support its position in this case." I question whether testimony by a different Allstate representative who previously may have testified differently from the witnesses in this case actually qualifies as "impeachment" within the meaning of the rules. The fact that someone else may testify to something different than what one of Allstate's witnesses may testify to does not mean that the other person is an "impeachment" witness.

Impeachment evidence is offered to undermine a witness's credibility. *See Friedman v. Rehal*, 618 F.3d 142, 153–54 (2d Cir.2010) ("[I]mpeachment evidence ... is

offered to discredit a witness ... to reduce the effectiveness of [her] testimony by bringing forth evidence which explains why the jury should not put faith in [her] or [her] testimony." (second, third, and fourth alterations in original) (second omission in original) (*quoting Chiasson v. Zapata Gulf Marine Corp.*, 988 F.2d 513, 517 (5th Cir.1993)) (internal quotation marks omitted)); *United States v. Harris*, 557 F.3d 938, 942 (8th Cir.2009) ("Impeachment is an attack on the credibility of a witness...." (internal quotation marks omitted)); *cf. United States v. Carter*, 973 F.2d 1509, 1512 (10th Cir.1992) ("A witness' 'prior statements are admissible only to impeach or discredit the witness and are not competent substantive evidence of the facts to which the former statements relate.'" (quoting *United States v. Eaton*, 485 F.2d 102, 105 (10th Cir.1973))).

If these undisclosed witnesses are not testifying directly about specific inconsistent conduct or statements by specific Allstate's witnesses, I doubt that their testimony will qualify as "impeachment" under the normal understanding of that word. Nevertheless, I will **DENY WITHOUT PREJUDICE DKT. #162** and will consider any renewed objection to testimony by previously undisclosed witnesses at the time of trial in the context in which it is offered.

- **Dkt. #163:  Allstate's Motion in Limine re: Legal Conclusions and Opinions.**

Allstate has filed a motion seeking to limit the posing of questions in such a manner that would "demand the lay witness interpret the governing legal standards." Dkt. #163 at 1.  Specifically, Allstate seems to want to prevent questions that are phrased using the words "reasonable basis."   Per Allstate, "the form of the anticipated questions demands that the witness interpret the controlling standard of reasonableness

15

and then make a determination as to what conduct does or does not comply with the standard." Dkt. #163 at 3. In Allstate's view, a question to a witness phrased as "tell me the reasonable basis" for certain conduct, is asking the witness to tell the jury that which the jury is capable of deciding for itself, without the aid of lay witness opinions. *Id.* at 4. Allstate seems to suggest that a witness may be fairly asked "for the basis" for certain conduct, but not be asked "the reasonable basis" for certain conduct, or whether certain conduct by the witness was "reasonable" in the witness's view.

In response, Plaintiff points out that in a claim for common law insurance bad faith, proof of the claim requires that the Plaintiff show the insurer "knew or recklessly disregarded" that its conduct was unreasonable. Colo. Rev. Stat. §10-3-1113(3). Therefore, Plaintiff argues, evidence as to why certain Allstate witnesses thought their conduct was reasonable, or had "a reasonable basis" is relevant and does not infringe on the jury's ultimate determination as to whether Allstate's conduct was reasonable or not.

My view is that Allstate's concerns are overblown. Allstate cites no authority barring the specific questions using the word "reasonable." "Reasonable" is defined as "fair, proper, just, moderate, suitable under the circumstances." Black's Law Dictionary (6th ed. 1990) at 1265. A witness should be able to explain why his or her conduct was "suitable under the circumstances," "proper," or otherwise "reasonable." I see no material difference between asking a witness "the basis" for an action, versus the "reasonable basis for an action."

At the conclusion of the evidence, the jurors will be instructed on their obligations and duties. If an explanation for a witness's conduct does or does not appear reasonable to the jury, regardless of the witness's explanation for that conduct, the jury

16

can so find.  I will not issue an order in limine barring Plaintiff's counsel in advance from using particular adjectives in questioning witnesses.  Therefore, **Dkt #163 is DENIED WITHOUT PREJUDICE** and Allstate may raise objections to specific questions as they are posed in the context of the trial.

- **Dkt. #164:  Allstate's Motion in Limine re: Financial Status and Information.**

Allstate seeks to preclude Plaintiff from introducing evidence or argument about Allstate's net worth, any gains in stock price, profitability, or any effort to characterize this lawsuit as "David v. Goliath."  Such evidence or argument, Allstate says, would be designed to portray Allstate as a "deep pocket" able to endure a large judgment in Plaintiff's favor.  Such argument would be unfairly prejudicial, irrelevant, made in bad faith, and improper character evidence, according to Allstate.

Plaintiff argues that Allstate is well-known as a nation-wide insurance company with significant resources, and references to Allstate's financial status would be relevant to Plaintiff's claims because they would show Allstate's motivation to preserve its wealth, and that motivation forms the basis of bad faith law in Colorado.

I agree with Allstate.  "Reference to the wealth or poverty of either party, or reflection on financial disparity, is clearly improper."  *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983).  In *United States v. Socony Vacuum Oil Co.*, 310 U.S. 150, 239 (1940), the Supreme Court held appeals to class prejudice to be highly improper and urged trial courts to be alert to prevent such discourse.

Therefore, **ALLSTATE'S Motion in Limine DKT. #164 is GRANTED**.  Plaintiff's counsel and plaintiff's witnesses are ordered not to reference or to highlight Allstate's

wealth or financial status or compare Allstate's wealth or financial status to that of the Plaintiff.

I will note that Plaintiff's counsel in responding to this Motion miscites the *Garcia v. Sam Tanksley Trucking* case, misleadingly stating that in that case "the 10th Circuit concluded it was not error to reference the wealth of the defendant where the record demonstrated the size of the trucking company...." Dkt. #165 at 3. This is the opposite of what the Tenth Circuit in fact said in *Sam Tanklesy Trucking*. The Circuit explicitly found that the trial court had committed error by allowing the argument about the defendant's wealth: "Counsel for plaintiffs clearly overstepped the bounds of proper argument by attempting to contrast Tanksley's wealth with plaintiff's poverty." *Garcia v. Sam Tanksley Trucking, Inc.*, 708 F.2d 519, 522 (10th Cir. 1983). It was improper argument and error for the trial court to have allowed it. But ultimately, it ended up not being *reversible error* for a variety of reasons. *Id.*

I must register my disappointment in Plaintiff's counsel for making such a significant misrepresentation of the holding of a case. I am relying on counsel in this matter to act as officers of the Court, bringing to my attention and accurately citing appropriate authorities. When I discover a brazen misrepresentation by counsel of a case holding, it brings to mind the infamous "13th stroke of a clock at midnight," which "calls into question not only itself, but everything that has come before." Winning a minor forensic point in a brief is not worth the losing the respect and trust of the Court.

Dated: June 11, 2019

*N. Reid Neureiter*
N. Reid Neureiter
U.S. Magistrate Judge